(No. 41064.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. JOSE GARCIA TORRES, Appellant.

*Opinion filed June 4, 1973.*

GERALD W. GETTY, Public Defender, of Chicago (ELLIOT M. SAMUELS and JAMES J. DOHERTY, Assistant Public Defenders, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ELMER C. KISSANE and MARK T. ZUBOR, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, Jose Torres, was convicted of murder following a jury trial in the circuit court of Cook County, and was sentenced to death. He has appealed directly to this court from that conviction, pursuant to Supreme Court Rule 603. 43 Ill.2d R. 603.

On February 27, 1967, at approximately 1 A.M., Patricia Heinen was stabbed to death while walking in downtown Chicago. The next day, at approximately 10:30 P.M., police officers Learas and DiLeonardi arrested defendant. They took him to police headquarters where he was advised of his constitutional rights by Captain Flanagan in the presence of Learas and DiLeonardi. In response to the warnings, the defendant stated, "I know about lawyers." Flanagan then briefly questioned the defendant about the stabbing, but Torres did not admit anything.

Flanagan and DiLeonardi then left the interrogation room. Learas again advised defendant of his constitutional rights, this time in Spanish. Defendant was then asked by Learas if he understood his rights, and he responded that he did. A detailed confession followed. Later, defendant confessed to Captain Flanagan, and a subsequent confession was also given to an assistant State's Attorney who prior to his interrogation again advised defendant of his constitutional rights. Torres refused, however, to sign the

transcribed statement which contained this third confession.

The nature and location of the crime generated considerable publicity. The news media gave it extensive coverage during the days immediately following the stabbing, as well as during the inquest into the victim's death conducted less than two weeks later. Most of these articles were printed on the inner pages of newspapers.

Between the time of the inquest and the trial, the publicity abated. While additional news stories appeared as the date of the trial approached, none was placed on the front pages of newspapers, and most dealt purely with the factual accounts of the legal proceedings prior to the trial.

The defendant's first three contentions concern the publicity given the case by Chicago news media. He initially contends that his motion for a change of place of trial made pursuant to section 114–6 of the Code of Criminal Procedure (Ill. Rev. Stat. 1965, ch. 38, par. 114–6) was wrongfully denied. The motion alleged that pretrial publicity had so prejudiced the inhabitants of Cook County against Torres that he could not receive a fair and impartial trial as guaranteed to him under the due-process clauses of the State and Federal constitutions.

At the hearing on the motion the defendant introduced as exhibits several articles from Chicago newspapers relating to the crime and also evidence that the identifying witnesses had appeared on television and told of identifying the defendant. At the conclusion of the hearing the court found that the publicity was not so pervasive as to create in a metropolitan area as large as Cook County a prejudice against the defendant such as would make it impossible for him to receive a fair trial.

The publicity within the first 10 days after the commission of the offense was the most intensive, and the nature of the publicity at that time was less factual and more likely to prejudice the defendant than was the later

publicity. During that period news articles with headings such as "Admits Loop Murder of Woman"; "Admits Killing Clerk, Charged With Murder" and "Purse Thief Held as Girl Killer" were printed in the Chicago daily newspapers. Also, parts of the defendant's confession which had been read at the coroner's inquest were printed by the news media. Most of this material was printed on the inner pages of the papers. Thereafter, the publicity abated until proceedings were had in court relating to motions filed in the case. The nature of the publicity concerning these court proceedings was more objective. When the court denied the defendant's motion to suppress his confession the caption on the news account concerning the court's order read "Confession Okayed in Loop Murder."

The judge did not have the benefit of the *voir dire* examination at the time he ruled on the motion for the change of venue; however, now, not only do we have the evidence of the nature and the intensity of the publicity, but we are able to judge the effect of the publicity as reflected in the attitude of the prospective jurors revealed on the *voir dire* examination. "The examination of prospective jurors on *voir dire* is, in a typical instance of pretrial publicity, probably the most valuable means of ascertaining partiality or indifference among persons summoned as jurors." *People v. Kurtz, 37 Ill.2d 103,* at 108.

The prospective jurors on examination did not reflect a deep-seated prejudice against the defendant. Although about 42 jurors were excused for cause, 32 of this number were excused because of their opposition to the death penalty. Several of the prospective jurors had not heard of the occurrence, and most of the ones that had heard of the case recalled it only in a general way. Approximately 10 jurors were excused because they felt that they could have been influenced by the publicity. The nature and the intensity of the publicity and its effect as revealed by the *voir dire* examination are not comparable to the situations

which existed in the cases relied upon by the defendant. See *Irvin v. Dowd, 366 U.S. 717, 6 L. Ed. 2d 751, 81 S. Ct. 1639; Sheppard v. Maxwell, 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507.*

Some of the defendant's criticism of the conduct of the press in this case is justified. We fully support the public's "right to know" and the right of the press to fulfill the function of informing the public. We are also gravely concerned, however, that the defendant receive a trial by a fair and impartial jury. We do not think that either purpose is advanced by conducting a mock trial through the media with witnesses appearing on television to identify the defendant and with excerpts from the defendant's confession being printed in the papers before the trial. Fortunately, the *voir dire* examination indicated that the impact of this publicity in this case did not prejudice a sufficiently large segment of the population of the county to make it impossible to select an impartial jury. We can visualize circumstances where this type of reporting could seriously affect the defendant's right to a trial by jury as guaranteed by the sixth and fourteenth amendments.

We note that the defendant's counsel did not challenge for cause a single member of the jury sworn to try the case, and, in fact, the examination revealed no reason to do so. This failure to challenge any of the jurors for cause is strong evidence that counsel was convinced the jurors were not biased and had not formed a conviction of the defendant's guilt. *Beck v. Washington, 369 U.S. 541, 8 L. Ed. 2d 98, 82 S. Ct. 955; People v. Speck, 41 Ill.2d 177.*

The proof of potentially harmful publicity within a community does not alone establish proof of community prejudice as each case must be judged on its own facts. (*People v. Gendron, 41 Ill.2d 351, 354.*) Our examination of the evidence relating to the publicity and its effect as revealed by the *voir dire* examination convinces us that the defendant received a trial by a fair and impartial jury. The

jurors that had been exposed to the publicity stated that they had not formed an opinion as to the defendant's guilt and that they would not be influenced by what they had heard and read. There is no indication that the general community attitude was so prejudiced against the defendant as to cause us to reject these answers. *Beck v. Washington, 369 U.S. at 557, 8 L. Ed. 2d at 112.*

The defendant next contends that the trial court erred in denying his motion for a continuance to abate the impact of the pretrial publicity. We find no merit in this contention for the same reason which impelled us to find no error in the trial court's refusal to grant a change of venue.

Following its selection, the court ordered the jury sequestered and admonished the jurors not to read any material or listen to radio or television programs concerning the case. During the second day of trial the defendant moved for a mistrial alleging that this admonition was violated. The court then interrogated each juror individually and learned that one juror had noticed the words "Loop Killing" and the name of the victim in a newspaper article but had not read the article. This juror immediately called the matter to the attention of the bailiff and the article was cut out of the paper. Another juror had observed the defendant's picture on television momentarily. The other jurors had not seen nor read anything concerning the case. Following the interrogation of the jurors the court denied the defendant's motion for a mistrial, stating that the minimal exposure disclosed by the interrogation did not prejudice the defendant.

To warrant reversal, it must reasonably appear that at least some of the jurors have been influenced or prejudiced to the extent that they cannot be fair and impartial. (*People v. Malmenato, 14 Ill.2d 52, 65.*) Judged by this standard, we conclude that the trial court did not err in denying the defendant's motion for a mistrial.

The defendant contends that he was denied his right

to counsel as guaranteed by the sixth amendment of the Federal Constitution and section 9 of article II of the Illinois Constitution of 1870. It is defendant's position that he was not represented by competent counsel. The defendant's trial attorney was not appointed by the court but entered his appearance on behalf of the defendant. In such a case the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or a sham. *People v. Redmond, 50 Ill.2d 313; People v. Stanley, 50 Ill.2d 320; People v. Green, 36 Ill.2d 349; People v. Williams, 26 Ill.2d 190.*

Defense counsel was faced with a case in which his defendant had confessed to the crime on three separate occasions to three separate people; an eyewitness had identified him as the murderer, and another witness had placed him near the scene of the crime at the time of the murder. Under such circumstances, we believe that the defense counsel presented the best defense possible. He filed a motion for inspection of physical evidence, a motion for a bill of particulars, a motion to set bail, a motion to remand the cause for a preliminary hearing, a motion for substitution of judges, a motion to suppress evidence, a motion to suppress the confessions, a motion for a change of venue, and a motion for a continuance. In addition, he vigorously advocated his client's cause and thoroughly cross-examined the State's witnesses. He introduced evidence at both the hearings on the motions and at the trial, and he utilized all of the facts at his disposal to formulate a defense that, given the situation, was the best that could possibly be expected.

The defendant complains that the comments of his counsel made during final argument in effect confessed his guilt. We do not agree. In appraising the comments we must realize that uppermost in counsel's mind was the effort to avoid the death penalty. The fact that his effort

did not succeed does not make his representation incompetent. It is apparent that his argument was part of his trial strategy to achieve the best result possible for the defendant. Errors in strategy and of judgment on the part of counsel do not render the representation incompetent. (*People v. Somerville, 42 Ill.2d 1, 11; People v. Washington, 41 Ill.2d 16, 21.*) We conclude that the defendant was not denied representation by competent counsel.

Defendant contends that his confessions were obtained in violation of his rights as prescribed by *Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.* We do not agree. No confession was given prior to the time that Captain Flanagan advised the defendant of his rights, following which the defendant replied, "I know about lawyers." Likewise, no confession was made prior to the second giving of the *Miranda* warnings, this time in Spanish by Officer Learas, following which the defendant stated that he understood them. It was following the second warning that the defendant first confessed to Officer Learas. The defendant confessed a second time to Captain Flanagan when he returned to the room a few minutes later, and about three hours later he again confessed to an assistant State's Attorney. The trial court properly found that the defendant had been given his *Miranda* warnings prior to his first confession.

The defendant further contends that he did not knowingly waive his constitutional rights. The trial court not only found that the *Miranda* warnings had been given, but the court also found that the defendant had exhibited a full understanding of his rights and that he knowingly and understandingly waived them after they had been stated to him. In *People v. Burbank, 53 Ill.2d 261,* at 266, we stated: "The preliminary inquiry as to whether the defendant has been properly warned and whether he knowingly waived his rights is for the trial court. In making its determination the court need not be convinced

beyond a reasonable doubt and its findings will not be disturbed unless it can be said that they are against the manifest weight of the evidence. *Lego v. Twomey, 404 U.S. 477, 30 L. Ed. 2d 618, 92 S. Ct. 619; People v. Dailey, 51 Ill. 2d 239; People v. Higgins, 50 Ill. 2d 221.*"

This court has also stated that once a defendant has been advised of his rights and indicates that he understands them, the fact that he chooses to speak and not to request a lawyer is evidence that he knows his rights and chooses not to exercise them. *People v. Burbank, 53 Ill. 2d 261; People v. Brooks, 51 Ill. 2d 156; People v. Higgins, 50 Ill. 2d 221.*

The evidence that the defendant had been warned of his rights, and his statements that he understood them, followed by his confessions, support the court's finding of a knowing waiver of these rights. This finding is not contrary to the manifest weight of the evidence.

The defendant next contends that his waiver was influenced by a promise by Officer Learas that if he confessed he would only be sentenced from 2 to 5 years in the penitentiary and that while in jail he would receive a good education. Officer Learas testified at the hearing on the motion to suppress that he did not make this statement to the defendant. The trial judge heard the conflicting testimony and his determination that the confessions were voluntary and were not induced by the alleged statements will not be disturbed unless it can be said that it is contrary to the manifest weight of the evidence. (*People v. Burbank, 53 Ill. 2d 261; People v. Johnson, 44 Ill. 2d 463.*) We find that this determination is not contrary to the manifest weight of the evidence.

The defendant also argues that it was error to admit into evidence his unsigned written statement, because "If three confessions are admitted in evidence over objection, the repetitive bombarding of the jury with proof of confession of guilt is unfair, as it constitutes misleading

corroboration." We see no merit in this contention. The defendant confessed three separate times to three separate individuals. The three confessions constituted competent admissible evidence. Although the effect of their admission was cumulative, we have found nothing impermissible about the introduction of cumulative evidence. *People v. Higgins, 50 Ill. 2d 221; People v. Rosochacki, 41 Ill. 2d 483;* and *People v. Price, 371 Ill. 137.*

Lastly, the defendant contends that his death penalty must be set aside because of the violation of the jury selection procedures as established in *Witherspoon v. Illinois, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770.* This contention has been rendered moot by the subsequent decisions of the Supreme Court of the United States. In *Furman v. Georgia, 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726,* the Supreme Court held that the death penalty as carried out under the statutes considered constituted cruel and unusual punishment in violation of the eighth and fourteenth amendments. In *Moore v. Illinois, 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562,* following *Furman,* the Supreme Court held the imposition of the death penalty under the Illinois statute to be violative of the eighth and fourteenth amendments and found it unnecessary to consider a claimed noncompliance with the *Witherspoon* standards. We therefore vacate the death penalty imposed in this case, and following the precedent of *People v. Speck, 52 Ill. 2d 284,* and *People v. Clark, 52 Ill. 2d 374,* this cause is remanded to the circuit court of Cook County with directions to impose a sentence other than death.

*Affirmed and remanded, with directions.*