THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE REESE, Defendant-Appellant.

First District (2nd Division) No. 81—2627

Opinion filed February 14, 1984.

978

Steven Clark and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James Bigoness, and LuAnn Rodi, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

Defendant, Willie Reese, appeals from his convictions of two counts of murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)), one count of attempt (murder) (Ill. Rev. Stat. 1977, ch. 38, par. 8—4), one count

of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2), and one count of unlawful restraint (Ill. Rev. Stat. 1977, ch. 38, par. 10—3). The sentences imposed were concurrent terms of 80 years' imprisonment for the murder conviction, 30 years' imprisonment for the attempt (murder) conviction, 30 years' imprisonment for the armed robbery conviction, and three years' imprisonment for the unlawful restraint conviction.

Four grounds for reversal are presented by defendant: (1) that he was not provided with effective assistance of counsel at trial; (2) that certain prosecutorial comments made during closing argument prejudicially influenced the jury and, thus, denied defendant his right to a fair trial; (3) that certain evidentiary rulings made by the trial court culminated in reversible error; and (4) that the sentence imposed was not warranted under the circumstances of this case. As the issue of reasonable doubt was not raised, only a brief summary of the evidence is necessary.

At approximately 8 p.m. on November 18, 1979, defendant and Calvin Thompson visited Benjamin Smith in his first-floor apartment located at 118 North Waller, Chicago. The three men proceeded to a back bedroom where they met with Smith's girlfriend, Janice Bates, and Smith's cousin, Bernard "Duke" Pickett. After Thompson and defendant snorted some cocaine that Smith had offered to them, Thompson left the apartment and returned shortly thereafter armed with a Colt AR-15, .223-caliber semi-automatic rifle. While Thompson pointed the weapon in Smith's direction, defendant pulled out a .32-caliber handgun and likewise pointed it at Smith. Bates and Smith were then robbed of jewelry and approximately $80 in cash.

Thereupon, Bates was taken into the bathroom by defendant, Smith was ordered to lie on the floor, and Pickett was told to kneel in front of a chair and position his head on the seat cushion. Following repeated demands for more money, defendant threw a pillow over Smith's head and fired his gun into it, but the bullet missed its intended target. Defendant, believing Smith to be dead, lifted up Smith's leg and let it fall to the ground. Smith, feigning that he had been killed, lay on the floor motionless and then heard a double shot go off just in front of him followed by his girlfriend's plea not to shoot; however, two more shots were fired immediately thereafter.

As soon as Smith heard defendant and Thompson leave the apartment, he jumped up and saw Pickett kneeling in front of a love seat with the left side of his head blown away. Smith then went into the bathroom where he found his girlfriend fatally shot, lying between the sink and bathtub.

Although arrest warrants for defendant and Thompson were obtained on November 24, 1979, it was not until May 1980 that defendant was arrested in California. Following extradition proceedings, defendant arrived in Chicago on July 23, 1980. Soon after his arrival at the Area 5 Headquarters, the *Miranda* warnings were read to defendant for at least the third time; after acknowledging that he understood his rights, defendant agreed to make a statement. While defendant confessed his participation in the instant offenses, former Assistant State's Attorney Ira Raphaelson took notes; also present was Detective Robert Smitka of the Chicago police department. Specifically, defendant's narrative of the events which transpired at Benjamin Smith's apartment on November 18, 1979, implicated Calvin Thompson in that defendant averred that after he fired his revolver at Smith's head, Thompson proceeded to shoot Pickett and Bates with the rifle.

Since defendant refused to allow this narration to be transcribed into a formal court-reported statement, Raphaelson asked him to read the notes, initial all scratched-out words, and then sign the paper at the bottom. Smitka and Raphaelson also signed this inculpatory statement at the bottom of the page as witnesses to defendant's signature.

In July 1980, defendant was indicted on six counts of murder, one count of attempt (murder), one count of armed robbery, one count of unlawful restraint and two counts of armed violence. The two armed violence counts were nol prossed and, following a jury trial,[1] defendant was found guilty of murder, armed robbery, attempt (murder) and unlawful restraint. From these convictions, defendant now appeals.

## I

Before reaching the legal arguments advanced by the parties, we first consider the merits of the State's motion before this court to strike a certain portion of the record, as well as the statement of facts and part I of the argument presented in defendant's brief.

Specifically, counsel for defendant at trial chose not to call Calvin Thompson to testify in the case at bar as a defense witness; yet, following defendant's conviction, sentence and appeal to this court, the assistant appellate defender filed a brief which extensively referred to testimony proffered by Thompson during his separate jury trial. This exculpatory testimony, in essence, provided Thompson's jury with an

---

[1]One of two cases simultaneously tried before separate juries. The second jury trial, involving the prosecution of Calvin Thompson, was presumably requested due to the incriminatory nature of defendant's statement.

alibi that defendant and Thompson could not have been involved in the crimes with which they were charged. Thompson averred that on November 18, 1979, at approximately 8 p.m., he and defendant arrived at Phil Allen's house near Washington Boulevard. After Allen's mother let them in, they waited approximately 20 minutes and then, since Allen had not yet returned home, defendant and Thompson left for the Grand Motel on West Madison Street. Upon their arrival at the motel at approximately 9 p.m. that night, the two men allegedly registered for the eight-hour traveler's rate, showered, changed clothes and waited for Allen, who arrived at approximately 11 p.m.

Officer Renard Jackson of the Chicago police department, on assignment in the Austin District, was dispatched to the scene of the shootings at 8:45 p.m. It was Benjamin Smith's assertion that defendant and Thompson had arrived at his apartment at approximately 8 p.m. that night. Thus, as a result of Thompson's alibi and the testimonial evidence proffered in support thereof, he was acquitted of all charges at the conclusion of his separate jury trial in September 1981.

Defendant now argues that had Thompson testified at his trial, such testimony might have been exonerative. Hence, the assistant appellate defender has incorporated testimony from an entirely separate prosecution into the instant report of proceedings, and has made extensive reference to said testimony in the statement of facts, and part I of the argument of the brief filed on behalf of defendant.

In the absence of a stipulation between the parties, matters outside the record cannot be considered by this court on review (*People v. Haas* (1981), 100 Ill. App. 3d 1143, 1149, 427 N.E.2d 853), even though they are included in the instant transcript of record (*People v. Sheridan* (1977), 51 Ill. App. 3d 963, 965, 367 N.E.2d 422, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 68, 98 S. Ct. 1622). Regarding the present case, there was neither a stipulation between the parties, nor a request made by the assistant appellate defender to this court seeking permission to supplement the record from the trial below with the testimonial evidence proffered by Calvin Thompson at his separate jury trial. Therefore, the State's motion to strike is granted as to the improper incorporation of Thompson's testimony into the instant report of proceedings, as well as to the facts and argument contained in defendant's brief which are *dehors* the record.

## II

Defendant initially claims that he was deprived of his constitutional guarantee of effective representation of counsel because his trial attorney did not call Thompson as a witness for the defense. We

find no merit to this assertion.

■■ ■ In order to establish incompetent and ineffective assistance of either a privately retained or a court-appointed lawyer, it must be shown that "the incompetence produced substantial prejudice to the defendant without which the result would probably have been different." (*People v. Royse* (1983), 99 Ill. 2d 163, 168.) The determination of the efficacy of representation requires an examination of the totality of circumstances and the record as a whole. (*People v. Shepard* (1983), 114 Ill. App. 3d 598, 603, 449 N.E.2d 222.) However, a review of counsel's competency does not extend to those areas involving trial tactics or strategy, which are purely matters of professional judgment. (*People v. Haywood* (1980), 82 Ill. 2d 540, 543-44, 413 N.E.2d 410, citing *People v. Witherspoon* (1973), 55 Ill. 2d 18, 22, 302 N.E.2d 3.) Decisions on whether or not to call certain witnesses for the defense, like jury selection, have been recognized as matters of trial strategy and, thus, are not within the scope of our review. *People v. Hebein* (1982), 111 Ill. App. 3d 830, 849, 444 N.E.2d 782; see also *People v. Witherspoon* (1973), 55 Ill. 2d 18, 22, and *People v. Shepard* (1983), 114 Ill. App. 3d 598, 603-04.

■■ In the case at bar, the fact that defendant's trial counsel did not call Calvin Thompson as a witness for the defense was purely a matter of professional judgment and trial strategy. The defense attorney even acknowledged this during the argument on his motions *in limine*: "I do wish to advise the Court that in the event that Calvin Thompson does testify, it may be my judgment, at that time, that I will want our jury to hear that." The court soon thereafter stated: "That is your strategy. You don't have to disclose that to me now." We regard this characterization by the trial court to be correct. Nonetheless, in support of the claim of ineffective representation, defendant cites *People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83, where after being convicted of voluntary manslaughter, the defendant filed a post-conviction petition alleging incompetent representation which the trial court dismissed without conducting an evidentiary hearing. Our supreme court held that the defendant was entitled to such a hearing because there was nothing in the record to indicate whether counsel attempted to locate and interview those persons present in the apartment at the time of the shooting; thereafter, defendant presented to the reviewing court favorable evidence that was actually available at trial. (46 Ill. 2d 153, 158-59.) The omitted testimony in *Stepheny* appeared to unequivocally support the theory of self-defense which defendant had argued throughout trial. Here, however, Calvin Thompson's testimony does not unequivocally provide

defendant with an alibi, particularly in view of the inculpatory nature of defendant's statement made to the assistant State's Attorney and the Chicago police officer, the voluntariness of which has not been challenged in this appeal. Consequently, we are of the opinion that defendant's trial counsel, in his judgment, could well have concluded that Calvin Thompson's testimony might have been as damaging as it would have been helpful.

In *People v. Corder* (1982), 103 Ill. App. 3d 434, 431 N.E.2d 701, *appeal denied* (1982), 91 Ill. 2d 561, another case relied upon by defendant, the accused was convicted on the strength of the identification testimony of one undercover police officer, who did not effectuate the arrest at the time of an unlawful delivery of a substance represented to be a controlled substance. The police officer stated that the criminal was clean shaven; however, counsel at trial was aware of defendant's driver's license showing the presence of a beard six days following his alleged commission of the crime. In addition, counsel had received a list of witnesses, none of which were interviewed. Since "[n]either the license nor a single witness was subpoenaed," defendant's trial attorney was characterized as actually incompetent, and such incompetence was held to have produced substantial prejudice to defendant without which the outcome of his trial would probably have been different. *People v. Corder* (1982), 103 Ill. App. 3d 434, 438.

Here, failure on the part of defense counsel to call Calvin Thompson as a witness for the defense may very well have emanated from a misjudgment in trial strategy as to what Thompson would actually say that would either inculpate or exculpate defendant. However, viewing the facts of this case in their totality, rather than focusing upon an isolated, tactical decision made during the course of trial, we cannot conclude that the instant record evinces that degree of prejudice to defendant without which the outcome of his trial would probably have been different. We reach this result particularly in light of the fact that there is no allegation on appeal of any reasonable doubt concerning defendant's guilt.

### III

■ We next consider defendant's contention that he was denied a fair trial because of the following question asked of a detective during the State's case-in-chief: "[W]hat happened between the time that you—that Willie Reese was arrested in May until the time that you went to California in July?" Defense counsel's objection to this query was properly overruled since the question did not constitute direct evidence of defendant's consciousness of guilt, but merely permitted an

inference of suspicion. The record does not manifest an effort on the part of the prosecution to elaborate on, much less exploit, the detective's response that extradition proceedings took place.

Defendant also maintains that five comments made during the prosecutor's closing argument prejudicially influenced the jury and, therefore, deprived defendant of a fair trial. Citations of error are made with regard to the following remarks:

"[STATE]: Ladies and Gentlemen, let me tell you if there was something wrong with this statement [defendant's confession], if there was some reason you couldn't hear that statement, that judge wouldn't let you hear it."

"[STATE]: Pictures. Why weren't any pictures taken [during the confession]? There was a picture taken of him that morning. We tried to show it to him, and he objected."

"[STATE]: Janice Bates had rights. Bernard Pickett had rights. Janice Bates had the right to bring up her two children."

"[STATE]: *** beyond a reasonable doubt is not some lofty, standard goal."

"[STATE]: Isn't it kind of a strange coincidence in this case, he leaves with the key and is arrested close to 200 days later in California and extradited back to Chicago."

The trial court sustained defense counsel's objections to the first three comments and, accordingly, instructed the jury to disregard them. In response to defense counsel's objection to the fourth remark, the trial court told the jury that "[t]here is no definition of reasonable doubt that is going to be given by counsel ***." Regarding the fifth comment, the court stated that "the jury will decide the case based on the evidence. If it is not in evidence, the jury will disregard it."

■■ ■ It is an oft-repeated principle that a prosecutor is to be permitted great latitude in his closing argument (*People v. Hine* (1980), 88 Ill. App. 3d 671, 679, 410 N.E.2d 1017), and the trial court's determination of the propriety of such an argument will not be disturbed on review absent extreme error (*People v. Maldonado* (1981), 101 Ill. App. 3d 948, 951, 428 N.E.2d 1087, *appeal denied* (1981), 85 Ill. 2d 571). The standard for determining if prosecutorial comments made during closing argument constitute reversible error is whether those remarks were such that, without their having been made, the jury might have reached a different result. (*People v. Barnes* (1983), 117 Ill. App. 3d 965, 978, 453 N.E.2d 1371; *People v. Panczko* (1980), 86 Ill. App. 3d 409, 413, 407 N.E.2d 988.) In addition, we note with special significance that "it is the duty of a reviewing

court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations," for "the interests preserved by the doctrine of harmless error cannot be so lightly and casually ignored in order to chastise *** prosecutorial overreaching." *United States v. Hasting* (1983), 461 U.S. 499, 507, 509, 76 L. Ed. 2d 96, 105, 106, 103 S. Ct. 1974, 1979, 1980.

■ We therefore conclude that defendant was not substantially prejudiced; however, our determination is such only because it is manifest here that the evidence establishing defendant's guilt was overwhelming. Indeed, defendant does not contest the sufficiency of the evidence against him.

## IV

The next issue for resolution involves defendant's assertion that two evidentiary rulings made by the trial court culminated in reversible error.

## A

First, defendant cites error in the trial court's refusal to allow defense counsel to cross-examine a State's witness, Benjamin Smith, with regard to charges brought against him that were subsequently stricken with leave to reinstate. An examination of Smith's criminal record reveals that from January 23, 1979, through April 23, 1980, he was arrested and charged with possibly one felony[2] and four misdemeanor offenses—all of which were disposed of in a preliminary hearing court. Defendant, however, was not arrested for the instant offenses until May 1980; he was not indicted for these offenses until July 1980. His trial commenced September 4, 1981. As a result, defendant's averment that the State dismissed Smith's charges "DURING THE PENDENCY OF THIS CASE" is delusive.

■ ■ Nonetheless, it is well settled that the widest latitude must be given to defense counsel on cross-examination to develop matters that can reasonably show bias, motive or willingness of the State's witness to testify. (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 156, 429 N.E.2d 526; *People v. Barr* (1972), 51 Ill. 2d 50, 52, 280 N.E.2d 708.) Cross-examination for such impeachment purposes is a matter of right, subject to the sound discretion of the trial court; reversal is warranted only where there is an abuse of discretion resulting in manifest prejudice to defendant. (*People v. Winfield* (1983), 113

---

[2]The value of a stolen automobile was not listed in the records of the Chicago Police Department, Identification Section.

Ill. App. 3d 818, 831, 447 N.E.2d 1029; *People v. Lenard* (1979), 79 Ill. App. 3d 1046, 1049-50, 398 N.E.2d 1054.) "[T]here is no such abuse unless an offer of proof demonstrates that the evidence excluded is positive and direct on the issue of bias or motive to testify falsely [citations], rather than remote or uncertain [citation]." *People v. Winfield* (1983), 113 Ill. App. 3d 818, 831.

■■ The period of limitation for misdemeanor prosecutions is one year and six months; the period of limitation for felony prosecutions is three years. (Ill. Rev. Stat. 1979, ch. 38, par. 3—5(b).) The State could have reinstated at least two of Smith's five dismissed charges at the time of the instant trial. We think the jury was entitled to know the nature of Smith's criminal charges "in order that it [could] have before it complete information so as to be better able to resolve the bias question." *People v. Rufus* (1982), 104 Ill. App. 3d 467, 474, 432 N.E.2d 1089, *appeal denied* (1982), 91 Ill. 2d 578.

However, as we noted in *Rufus*, "[w]hile the trial court abused its discretion in limiting cross-examination, we cannot say that defendant was manifestly prejudiced by this error." (104 Ill. App. 3d 467, 474.) Considering the substantial cross-examination of Benjamin Smith by defendant's attorney as well as his closing argument to the jury, Smith's credibility, like that of the State's witness in *Rufus*, was clearly brought to the attention of the jurors. Therefore, in view of the overwhelming nature of the evidence establishing defendant's guilt, we cannot conclude that the lower court's restriction on Smith's cross-examination warrants a new trial.

### B

The second evidentiary ruling contested by defendant concerns the trial court's refusal to allow the introduction of evidence that one of the murder victims, Bernard Pickett, had once assisted the authorities in apprehending Benjamin Smith on drug charges. It is thus urged that the preclusion of this evidence, allegedly suggesting a motive on the part of Smith to testify falsely, constituted reversible error.

■■ A defendant is entitled to all reasonable opportunities to present evidence which might tend to create doubt as to his guilt; but, it is within the discretion of the trial court to exclude such evidence, without infringing on the accused's constitutional right to present a defense, when the relevancy of the evidence is so speculative as to impart little probative value. *People v. Hunt* (1981), 99 Ill. App. 3d 958, 965, 426 N.E.2d 568; *People v. Mikel* (1979), 73 Ill. App. 3d 21, 30, 391 N.E.2d 550.

Following denial of defendant's motion for a directed finding, Officer Joseph Gawlek of the Chicago police department was called by the defense to establish the alleged motive for the murder of Bernard Pickett. Pursuant to the State's request, and over defendant's objection, a *voir dire* examination was conducted. During this examination, it was established that on November 3, 1977, Officer Gawlek obtained a search warrant "for an individual named Ben at 1210 North Lockwood, on the first floor." Benjamin Smith was not in the apartment when the officer arrived; however, Pickett was present and told Officer Gawlek that everything in the apartment belonged to his cousin, Smith. Pickett also provided the police officer with a photograph of his cousin. Smith was arrested on November 28, 1977, for possession of controlled substance. After the arrest, Smith stated that he knew from whom the officer obtained the picture and inculpatory information; no elaboration on this statement was made.

At the conclusion of the *voir dire* examination, and pursuant to the State's motion *in limine*, the trial court ruled that Officer Gawlek's testimony was irrelevant to the resolution of the issues involved in the case at bar. We consider this ruling to be correct, for as the trial court aptly pointed out to defense counsel: "The Court can't preclude you from calling witnesses at times, but one thing the Court has to seek to do and that is to keep things on track and to avoid being derailed and going off on tangents."

██ Smith's arrest took place on November 28, 1977. Pickett's murder occurred on November 18, 1979. In essence, defendant's attorney requested the trial court to speculate on a theory of defense that presented facts which, in the light of logic, were clearly too remote in time to have probative value; defendant's offer of proof was therefore properly denied for lack of relevancy.

### V

Defendant further argues that the trial court abused its discretion in determining his sentence. We disagree.

 ██ In Illinois, a sentencing court's determination of the punishment to be imposed involves consideration of the subjective circumstances presented in each individual case, such as the defendant's mentality; his habits; his general moral character; his abnormal or subnormal tendencies; and his natural inclination or aversion to commit crime. (*People v. Dukett* (1974), 56 Ill. 2d 432, 452, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226.) In addition to providing for the possibility of the offender's rehabilitation, we recognize that the lower court is also charged with the

"delicate responsibility" of fashioning a sentence that will protect the interests of society. *People v. Perruquet* (1977), 68 Ill. 2d 149, 155, 368 N.E.2d 882.

■■■ In the present case, it is suggested that the trial court was unconcerned with defendant's mitigating circumstances. To the contrary, however, we discern careful consideration of all relevant factors in aggravation as well as mitigation. The court stated during the sentencing hearing that "[t]he defendant was a policeman in the army, he has a high school education, he has sought to attend college." The court considered the presentence investigation report which not only revealed defendant's personal traits and family situation, but also his unsatisfactory probation record and criminal history of unlawful use of weapons. Further, the court provided defendant's lawyer with ample opportunity, which he fully utilized, for argument in mitigation. In fact, as a prelude to this argument, defendant himself took the stand and testified as to his educational, athletic, military, religious and employment background. It is therefore amiss for defendant to now assert that the trial court completely failed to take into account mitigating factors.

The final citation of error for review concerns the propriety of the lower court's determination that defendant was eligible to receive an extended term of imprisonment.

■■■ Without question, sentencing judges are vested with wide discretion in order to permit reasoned judgments as to the punishment appropriate to the particular circumstances presented in each case. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344.) Within this broad discretionary framework, a trial court may impose an extended term of imprisonment upon any offender, at least 17 years old on the date the crime was committed, who is "convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2).) It was on this statutory provision in the Unified Code of Corrections that the trial court premised its determination that an extended-term sentence was warranted in light of the brutal and abhorrent conduct accompanying the instant offenses.

From our review of the record, it is readily discernible that the sentencing judge was faced with the task of imposing on defendant a penalty that was commensurate with the degree of seriousness involved in the offenses he committed. Before rendition of the sentence, the court aptly commented on the especially brutal method employed to kill the victims: "They were literally blown away, literally blown

away *** it had been determined that they were going to die and they had no alternative to do anything except die."

■ As we stated in a recent case involving an identical attack on the imposition of an extended-term sentence under section 5—5—3.2(b), "[t]o characterize this action as if it was an everyday occurrence to which society's sense of outrage has become immune is ludicrous. We find defendant's acts to be clearly indicative of wanton cruelty." *People v. Hudson* (1981), 102 Ill. App. 3d 346, 353, 430 N.E.2d 51, *appeal denied* (1982), 91 Ill. 2d 554.

The instant record evinces that the sentence imposed upon defendant was rendered after full consideration of all factors presented in aggravation and mitigation. In view of the brutal and heinous nature of the execution-style murders as well as the execution-style attempted murder, the trial court correctly held that an extended term was necessary to serve the ends of justice in this case. We are therefore of the opinion that defendant's 80-year sentence should not be reduced. As the State concedes, however, the sentencing order incorrectly reflects six counts of murder. Since defendant was convicted for the murder of two people, the lower court's order shall be corrected accordingly.

## VI

■ Contrary to defendant's contention, an indigent offender can be assessed costs in the appellate court upon affirmance of his conviction. (*People v. Nicholls* (1978), 71 Ill. 2d 166, 175-76, 374 N.E.2d 194.) As a result, under the authority of *Nicholls* and section 8 of "An Act concerning fees and salaries ***" (Ill. Rev. Stat. 1981, ch. 53, par. 8), we assess defendant $50 in costs for the State's defense of the instant appeal and hereby incorporate it as part of this judgment. However, the State's request for an additional $25 for oral argument is denied. This denial is predicated on our interpretation of the *per diem* provision of the statute ("For each day actually employed in the trial of a case, $25") as referring to an actual trial in the circuit court, rather than an oral argument before this court.

For the foregoing reasons, the State's motion to strike is granted; the judgment of the circuit court of Cook County is affirmed; and the order of sentence and commitment is to be corrected in accordance with the views expressed herein.

HARTMAN, P.J., and STAMOS, J., concur.