THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY WILLIAMS, Defendant-Appellant.
Third District    No. 3—90—0643

Opinion filed January 16, 1992.

STOUDER, J., dissenting.

Maurice M. Dore, of Dore & Rothschild, of Chicago, for appellant.

William Poncin, State's Attorney, of Macomb (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

On July 24, 1990, defendant, Anthony Williams, was found guilty at a bench trial in the circuit court of McDonough County of committing aggravated criminal sexual assault, in violation of section 12—14(a)(1) of the Criminal Code of 1961 (the Code) (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(a)(1)). Williams was sentenced to 12 years' imprisonment. He appeals. We affirm.

The trial commenced on July 18, 1990, with the testimony of J.O., the complainant and victim. J.O. testified that on September 24, 1988, she joined a friend in celebrating her friend's birthday. They went to a local tavern where J.O. drank about three beers. Thereafter, J.O. proceeded to the campus of Western Illinois University (WIU) to see a friend. While en route, she saw Mark Ackers, who was awaiting the arrival of two friends, one of whom was Williams.

J.O. later ran into Williams and his friend, Karl, who were looking for somewhere to "party." J.O. escorted Williams to the female section of a residence hall at WIU so he could purchase cocaine. There, Williams purchased some cocaine. J.O., Williams, Ackers, and another person returned to J.O.'s apartment and ingested some cocaine and marijuana. After a brief stay, Williams, Ackers, and their friend left. Shortly thereafter, Williams returned to J.O.'s apartment. He inhaled more cocaine, and asked to spend the night. J.O. agreed, provided he would sleep on the couch. Later, Williams knocked on her bedroom door, asking her to turn off a certain light. As she moved into the living room, she observed Williams was dressed only in his underwear. J.O. stated Williams then pulled a knife, placed it next to her face, pushed her to the couch, commanded her to undress, and engaged her in both oral sex and vaginal intercourse.

Following the incident, Williams requested J.O. drive him back to WIU. Upon returning to her apartment, J.O. told her neighbor of the assault. Ultimately, the police were contacted. J.O. initially went to the hospital to be examined and seek medical treatment if necessary. While there, she told the emergency room physician the factual history of the incident. J.O. next proceeded to the police station, even though she had been initially reluctant to contact the police. In her testimony, J.O. did not explicitly recall the manner in which Williams used the knife. The record reflects no neighbors heard any unusual noises emanating from her apartment at the time of the incident.

During the State's case in chief, J.O. was allowed to testify, over objection, to the adverse emotional effects the assault had on her. J.O. indicated that she had experienced panic attacks, depression, and was being treated by a doctor.

The examining emergency room physician also testified over objection to the factual history J.O. repeated to him regarding the incident. In addition, the physician testified that his examination of J.O. revealed no fresh bruises, scratches, or abrasions.

J.O. admitted to using narcotics immediately prior to this incident and also at other times. It is clear from the record that at one time, she had a drug dependency problem. The investigators discovered a knife in J.O.'s kitchen, but Williams' fingerprints were not found on the knife. The investigators did find Negroid hair samples within J.O.'s apartment.

Williams denied committing any of the offenses alleged by J.O. He emphasized that J.O. had ingested considerable amounts of cocaine and marijuana over the course of the night in question and that she craved more. Williams insisted that J.O. agreed to have sex with him if he would purchase some cocaine. Following Williams' purchase of cocaine at WIU, they all went back to J.O.'s apartment to "party." Williams testified that J.O. had invited him to come back to her apartment after everyone left. Upon his return, they finished off more cocaine and engaged in sex. Williams stated that J.O. did not resist him in any way or instruct him to discontinue having sex with her. Williams also denied possessing and using a knife as well as using any force against J.O. When Williams learned the police were looking for him, he voluntarily turned himself in to the authorities even though he did not have sufficient money to post bond.

Williams was convicted and sentenced following a bench trial. Williams obtained new counsel who then filed a post-trial motion

seeking a new trial on the grounds that his original trial counsel should have sought a change of venue. The trial judge denied Williams' post-trial motion. Thereafter, the trial judge sentenced Williams to 12 years' imprisonment in the Illinois Department of Corrections. The trial judge announced while sentencing Williams that he had considered the adverse effects of the assault on J.O., *e.g.*, psychological, emotional, physical, etc.

Williams' initial contention on appeal is that he was not proven guilty beyond a reasonable doubt of the offense of aggravated criminal sexual assault. Amidst this contention, Williams asserts that due to J.O.'s involvement with illegal drugs, her testimony was not reliable, credible, or trustworthy. Therefore, Williams alleges that J.O.'s testimony was not clear and convincing or sufficiently corroborated in order to support a conviction. Williams also contends that the trial judge applied an incorrect burden of proof in convicting him. Williams suggests that there was not sufficient evidence to corroborate J.O.'s testimony because J.O.'s testimony was substantially impeached.

■ Williams contends that allegations of sexual misconduct are easily made, hard to prove, and harder to defend. (*People v. Nunes* (1964), 30 Ill. 2d 143, 146, 195 N.E.2d 706.) Williams urges that a conviction for aggravated criminal sexual assault, where the defendant denies the charge, should be upheld upon review *only* when the testimony of the complainant is clear and convincing or is corroborated by other evidence. This standard of review has been followed in sex-offense cases for many years. However, our supreme court in a very recent decision has *rejected* the sex-offense standard of review, that a victim's testimony be clear and convincing or substantially corroborated. (*People v. Schott* (1991), 145 Ill. 2d 188.) The court in *Schott* has adopted the reasonable doubt test set forth in *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267. The proper standard of review according to *Collins* (106 Ill. 2d at 261) is that criminal convictions are not to be overturned on review unless the evidence is so improbable or unsatisfactory that it creates a doubt of the defendant's guilt. The *Collins* test to be employed on review " 'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

Prior to the *Schott* decision, we had already adopted the reasonable doubt standard articulated in *Collins* to be used when reviewing claims of evidentiary insufficiency in sex-offense cases. (*People v. Wheeler* (1991), 216 Ill. App. 3d 609, 575 N.E.2d 1326.) The resolution of factual disputes between the witnesses' testimony and the assessment of the credibility of the witnesses are matters best left to the sound discretion of the trial court. A reviewing court will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt remains. *People v. Roy* (1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208.

Williams maintains that J.O.'s testimony should be given little credibility due to her admitted drug use. A complainant's testimony need not be unimpeached, uncontradicted, or perfect to be clear and convincing. (*People v. Findlay* (1988), 177 Ill. App. 3d 903, 532 N.E.2d 1035.) Any weakness in the testimony, such as inability to remember exact dates and times, as well as other minor contradictions or inconsistencies, only affect the weight to be given the testimony, and do not themselves create a reasonable doubt. *People v. Sexton* (1987), 162 Ill. App. 3d 607, 515 N.E.2d 1359.

■ We find upon a review of the record that J.O.'s testimony was believable. Her recall appeared to be explicit and consistent. J.O. remembered the events of the evening and incident in both a chronological order and a coherent manner. The fact that she had a drug problem and ingested cocaine on the night in question did not dissuade the trial court from accepting her testimony regarding the incident. The trial court was clearly satisfied that J.O. was a credible witness and believable. The trial court was not only able to listen to her live presentation, but was also able to observe her manner and demeanor while testifying.

Further, J.O.'s testimony was sufficiently corroborated by other witnesses and the evidence. Her neighbor and the emergency room physician both testified consistently with J.O.'s version of the events. Even though the emergency room physician indicated that she was feeling the effect of drugs at the time of examination, the trial judge obviously felt that factor did not significantly detract from her credibility or the believability of her story. Based upon a review of the entire record, we find Williams was convicted based on evidence which proved the defendant guilty beyond a reasonable doubt.

■ Williams insists that the trial court committed reversible error when it allowed J.O. to testify concerning the adverse effects she suffered following the sexual assault. J.O. testified as follows:

(1) she suffered depression; (2) she experienced panic attacks and nightmares; and (3) she received treatment from a doctor. We find that J.O.'s testimony about the adverse effects of the sexual assault was admissible and did not prejudice Williams.

In *People v. Brown* (1982), 107 Ill. App. 3d 576, 437 N.E.2d 1240, the prosecutor elicited testimony from the complainant as to the psychiatric care and treatment she received following the attack. The court concluded that since the defendant attempted to discredit the credibility of the complainant, this testimony was material and relevant to the State's case. In *People v. Barlow* (1989), 188 Ill. App. 3d 393, 544 N.E.2d 947, it was apparent that the prosecution elicited testimony regarding the victim's mental state solely for the purpose of eliciting sympathy from the jury. However, the court found the inflammatory comments did not sufficiently inflame the emotion or passion of the jury to cause prejudice to the defendant. Our review of the record indicates J.O.'s testimony was not intended to inflame or arouse the sympathy of the trial judge. Williams attempted to discredit J.O.'s version of the events by claiming that the sexual encounter was consensual. Therefore, her testimony was material and relevant to the issue of consent.

Williams also suggests that J.O.'s testimony was irrelevant and should only have been presented by a duly qualified rape trauma syndrome expert. He cites *People v. Douglas* (1989), 183 Ill. App. 3d 241, 538 N.E.2d 1335, in support of this premise. *Douglas* is distinguishable from the present situation. In *Douglas*, an expert testified that the victim exhibited symptoms of rape trauma syndrome (RTS). The court in *Douglas* did *not* hold that the victim could *not* testify concerning the adverse effects resulting from a sexual assault. Rather, the victim in *Douglas* testified without objection to the adverse effects of the assault. The victim testified: (1) she lost weight; (2) she could not watch violent shows; (3) she is afraid of black people; (4) she quit her job; (5) she is receiving counseling; and (6) she encountered difficulty sleeping. In this appeal, RTS was *not* discussed nor was it an issue before the trial court. The State only asked J.O. to describe how the events of the assault affected her subsequent life. The defense's objection was overruled. The State indicated it was not going to present any expert testimony concerning RTS.

Each of the factors to which J.O. testified was within her personal knowledge. Our review of the record indicates this testimony was useful, sufficiently corroborated, and was admissible because it did not involve a subject beyond the realm of knowledge and under-

standing of a lay person. We find no expert testimony concerning RTS was required based on our review of the record.

■ Williams next argues the trial court committed reversible error by permitting the State in rebuttal to introduce new evidence as well as repeat certain portions of its case in chief. We disagree. It is normally not an abuse of discretion for the court to allow rebuttal testimony which should have been offered in the case in chief. (*In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 500 N.E.2d 612.) The admissibility of rebuttal evidence is a matter left to the sound discretion of the trial judge and is subject to reversal only if there is a clear abuse of that discretion. (*People v. Williams* (1981), 96 Ill. App. 3d 958, 422 N.E.2d 199.) J.O. was allowed in rebuttal to repeat certain portions of her testimony that she related during the State's case in chief. Repetition during rebuttal of a portion of the matters testified to in the State's case in chief is permissible if the trial judge determines that the rebuttal evidence helps to explain, repel, or contradict the defendant's case. *People v. Gray* (1980), 85 Ill. App. 3d 726, 410 N.E.2d 493.

■ Williams next contends that the trial judge committed reversible error by admitting into evidence J.O.'s statement which was made to the emergency room physician. We disagree for two reasons. Initially, the defendant waived any alleged error because his attorney vigorously cross-examined the doctor about the statements made by J.O. When a defendant objects to the introduction of certain testimony on direct examination, but then pursues that same line of questioning on cross-examination, the defendant waives any error with the introduction of such testimony. *People v. Bost* (1980), 80 Ill. App. 3d 933, 400 N.E.2d 734.

Also, it is noted that section 115—13 of the Code of Criminal Procedure of 1963 provides for the admissibility of such evidence. Section 115—13 states:

> "In a prosecution for violation of Section 12—13, 12—14, 12—15 or 12—16 of the 'Criminal Code of 1961', statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule." Ill. Rev. Stat. 1989, ch. 38, par. 115—13.

In *People v. Enoch* (1989), 189 Ill. App. 3d 535, 545 N.E.2d 429, the court upheld the admission of a sexual assault victim's state-

ment made to a treating physician under similar circumstances. In both that case and the present appeal, the trial judge ruled that such statements were admissible in evidence because they were made in connection with the diagnosis and treatment of the victim. The court in *Enoch* relied on the case of *United States v. Iron Shell* (8th Cir. 1980), 633 F.2d 77, where the court permitted the examining physician to testify about the statements made by the rape victim concerning how the attack on her was perpetrated. Statements made by the victim to her treating physician are admissible in evidence when these statements are made in response to the doctor in connection with his diagnosis and treatment. In addition, section 115—13 of the Code of Criminal Procedure provides the trial court with discretion in this matter because the trial court must determine whether the statements made by the victim are "reasonably pertinent to [the victim's] diagnosis or treatment." (Ill. Rev. Stat. 1989, ch. 38, par. 115—13.) A trial judge, when acting as the finder of fact, is presumed to have considered only admissible evidence in reaching his decision. (*People v. Roy* (1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208.) The trial court was in the better position to determine the proper weight to be given to the victim's testimony. We will defer to the trial court when there does not appear to be any abuse of its discretion.

■■ Williams next contends that he was denied his right to a fair trial due to the prosecutor misstating certain evidence and arguing improper inferences during closing argument. Williams claims the trial court committed reversible error by allowing the prosecutor to argue that the knife was found in J.O.'s kitchen because the kitchen is the last room that Williams walked through when he left her apartment. The layout of J.O.'s house was discussed during this trial, and it could have been inferred that such an occurrence was a possibility. Counsel may draw reasonable inferences from the evidence presented even if the inferences are unfavorable to the defendant. *People v. Garza* (1981), 92 Ill. App. 3d 723, 414 N.E.2d 1328.

A prosecutor is to be permitted great latitude in making his closing argument. The trial court's determination of the propriety of such argument will not be disturbed on review absent extreme error. The standard for determining if prosecutorial comments made during closing argument constitute reversible error is whether those remarks were such that, without their having been made, the jury might have reached a different result. (*People v. Reese* (1984), 121 Ill. App. 3d 977, 460 N.E.2d 446.) If the fact

finder found that such inference or suggestion was implausible or incredible, it could have disregarded this line of argument or suggestion. The scope, substance, and style of a closing argument must be left to the sound discretion of the trial court, which is in a better position to determine the real effect of any statement that otherwise might be considered prejudicial. In order to reverse a case on the basis of comments made in closing argument, it must be determined that the improper remarks complained of influenced the fact finder in a manner which resulted in substantial prejudice to the defendant. (*People v. Fain* (1976), 41 Ill. App. 3d 872, 355 N.E.2d 61.) Based upon our review of the record, we agree with the trial court's determination that the prosecutor's remark was harmless error.

■ Williams next asserts that the sentence imposed by the trial court was excessive. He specifically claims that the trial court should not have considered his use of the knife in the commission of the offense or the psychological impact of the assault on J.O. The trial court sentenced Williams to 12 years' imprisonment following his conviction of the Class X felony of aggravated criminal sexual assault. A conviction for a Class X felony is ordinarily punishable by a term of incarceration (in addition to other penalties) of not less than six nor more than 30 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3).) An appropriate sentence, within the statutory guidelines, is largely a matter of judicial discretion. A proper sentence must be based upon the particular circumstances of each case. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The trial judge is not required to set forth each and every reason or specify the weight given each factor considered in the sentencing decision. (*People v. Brajcki* (1986), 150 Ill. App. 3d 506, 501 N.E.2d 774.) In the present case, the trial judge considered Williams' use of the knife in committing this offense as well as the psychological impact of this assault on J.O. According to *People v. Sanford* (1983), 119 Ill. App. 3d 160, 456 N.E.2d 333, the trial court may consider the psychological impact of a sexual assault on the victim in determining an appropriate sentence. In addition, among the factors to be considered in imposing sentence are the circumstances surrounding the offense and the need to deter others from committing similar acts. (*People v. Seiber* (1979), 76 Ill. App. 3d 9, 394 N.E.2d 1044.) The trial judge, having heard the evidence first hand, was in a better position to weigh the sentencing factors. His determination should not be reversed absent a clear abuse of discretion. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) The sentence imposed by the trial judge was within the permissible range set forth

in the statute. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3).) The psychological impact of this incident upon J.O., as well as Williams' utilization of a knife in the furtherance of this offense, was certainly justification for a sentence greater than the minimum term of incarceration. For these reasons, the trial court's sentencing determination is affirmed.

■ The last contention Williams raises is that he did not receive effective assistance of counsel as required by the sixth amendment of the United States Constitution. Specifically, he contends that his counsel (1) should not have waived a jury trial; (2) failed to file, and should have filed, for a change of venue; and (3) failed to file, and should have filed, a motion to dismiss the charge.

Our review of the record indicates that Williams' claim of ineffective assistance of counsel is without merit. In order to establish that he did not receive effective assistance of counsel, Williams must show that his counsel's performance fell below an objective standard of reasonableness, and that but for his counsel's deficiency, the result of the trial would have been different. *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

The procedural decisions made by counsel during the course of a trial are largely a matter of trial strategy. The procedural decisions to waive a jury trial and not to seek a change of venue are, standing alone, not sufficient grounds to claim that his counsel was ineffective. *People v. Bendon* (1981), 97 Ill. App. 3d 107, 422 N.E.2d 645; *People v. Kubat* (1983), 94 Ill. 2d 437, 447 N.E.2d 247.

Our review of the record indicates that it was unlikely that counsel could have caused the information to be dismissed. If counsel attempted to do so, the trial court would have denied the motion since there are limited grounds upon which counsel can seek to have an indictment dismissed.

The information filed in this case appeared in part as follows:

"ANTHONY A. WILLIAMS on or about the 29th day of September, in the year of our Lord one thousand nine hundred and eighty-eight, at and within the said County of McDonough in the State of Illinois, aforesaid, while displaying a dangerous weapon, a knife, knowingly committed a criminal sexual assault, in violation of the Illinois Revised Statutes, Chapter 38, Section 12—13(a)(1), against [J.O.] in that by the use of force or by the threat of the use of force, the defendant placed his penis in the vagina of [J.O.], and did then and there, thereby, commit the offense of AGGRAVATED CRIMINAL SEXUAL AS-

SAULT, in violation of Chapter 38, Section 12—13(a)(1) of the Illinois Revised Statutes.

Class X Felony ***.''

A trial judge may dismiss criminal charges prior to trial only for the reasons set forth in section 114—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 114—1). Section 114—1 of the Code of Criminal Procedure of 1963 provides in pertinent part:

"114—1. Motion to dismiss charge. (a) Upon the written motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint upon any of the following grounds:

(1) The defendant has not been placed on trial in compliance with Section 103—5 of this Code;

(2) The prosecution of the offense is barred by Sections 3—3 through 3—8 of the 'Criminal Code of 1961', approved July 28, 1961, as heretofore and hereafter amended;

(3) The defendant has received immunity from prosecution for the offense charged;

(4) The indictment was returned by a Grand Jury which was improperly selected and which results in substantial injustice to the defendant;

(5) The indictment was returned by a Grand Jury which acted contrary to Article 112 of this Code and which results in substantial injustice to the defendant;

(6) The court in which the charge has been filed does not have jurisdiction;

(7) The county is an improper place of trial;

(8) The charge does not state an offense;

(9) The indictment is based solely upon the testimony of an incompetent witness;

(10) The defendant is misnamed in the charge and the misnomer results in substantial injustice to the defendant[;]

(11) The requirements of Section 109—3.1 have not been complied with.'' (Ill. Rev. Stat. 1989, ch. 38, par. 114—1.)

Otherwise, the court may only dismiss charges when there has been a clear denial of due process which prejudices a defendant. (*People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244.) When the sufficiency of the charge is challenged in a pretrial motion, the standard of review is to determine whether the charge complies with section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 111—3), which requires that the charge be in writing and state the name of the offense, the statutory provision allegedly vio-

lated, the name of the accused and the date and county of the offense, and set forth the nature and elements of the offense. If the charge meets these criteria, it should not be dismissed. (*People v. Simon* (1980), 91 Ill. App. 3d 667, 416 N.E.2d 285.) Therefore, based on our review of the information filed in this case, it would not have been dismissed by a trial judge. The information properly advised Williams of the nature of the offense and met the statutory requirements so that Williams had an adequate opportunity to prepare his defense.

Errors in judgment or trial strategy, standing alone, do not establish incompetency. (*People v. Murphy* (1978), 72 Ill. 2d 421, 437, 381 N.E.2d 677, 685.) A defendant is entitled to competent, not perfect or successful representation. (*People v. Torres* (1973), 54 Ill. 2d 384, 391, 297 N.E.2d 142.) There is a strong presumption that counsel's conduct and decision making falls within the wide range of professional assistance. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) To prevail on a claim of ineffective assistance of counsel, a defendant must show that there was a reasonable probability that but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

There is no indication from our review of the record that Williams did not receive a fair trial from the trial court. In addition, any indirect allegation of judicial prejudice is unfounded based on the record. Finally, if this matter proceeded in a different fashion, *i.e.*, before a jury and different judge, and if counsel sought dismissal of the indictment, there is no indication, nor can we speculate, that the eventual result would have ultimately been different. Williams was clearly aware that his counsel waived a jury trial and openly acknowledged the waiver in open court. For the foregoing reasons, we cannot agree that Williams received ineffective assistance of counsel.

For the reasons indicated, the circuit court of McDonough County is affirmed.

Affirmed.

BARRY, P.J., concurs.

JUSTICE STOUDER, dissenting:
I must respectfully dissent.

My concern relates to the issue whether the complainant should have been allowed to testify as to what effect the incident had on her. The complainant testified as to certain post-event traumatic effects of

the alleged sexual assault. Included among the various effects the incident had on her, the complainant referred to going to a rape treatment group and obtaining psychiatric counseling. Such testimony, in my estimation, is highly prejudicial and should only be allowed into evidence when supported by the testimony of a qualified expert on rape trauma syndrome. I emphasize that my concern is limited to whether testimony regarding an alleged victim receiving psychiatric counseling should be allowed at trial without subsequent corroborative testimony from the treating psychiatrist.

Section 115—7.2 of the Code of Criminal Procedure of 1963 provides that in a prosecution for an illegal sexual act perpetrated upon a victim "testimony by an expert, qualified by the court relating to any recognized and accepted form of post-traumatic stress syndrome shall be admissible as evidence." (Ill. Rev. Stat. 1989, ch. 38, par. 115—7.2.) The court in the instant case seems to casually brush aside this requirement by noting that in *People v. Douglas* (1989), 183 Ill. App. 3d 241, 538 N.E.2d 1335, the court did not hold that the victim could not testify about the adverse effects of the incident. This is true; however, the State in *Douglas* presented the testimony of a rape trauma syndrome expert who concluded the complainant's testimony regarding adverse effects of the incident were consistent with symptoms suffered by someone suffering from rape trauma syndrome. Indeed, the issue in *Douglas* was whether the expert should be barred from being considered an expert on rape trauma syndrome due to her lack of a formal psychology degree.

I am also concerned about the complainant's testimony that she had received psychiatric counseling subsequent to the incident. In *People v. Jackson* (1990), 203 Ill. App. 3d 1, 560 N.E.2d 1019, the court was faced with similar testimony regarding post-event traumatic effects. In *Jackson*, the complainant's mother testified that following the incident the complainant: (1) had become scared of her own house; (2) would follow her mother to every room in the house, including the bathroom; and (3) was restless at night and thought she heard the defendant breathing in her bedroom. The court did not find the mother's testimony to be prejudicial and in contrast cited two cases, *People v. Fuelner* (1982), 104 Ill. App. 3d 340, 432 N.E.2d 986, and *People v. Gillman* (1980), 91 Ill. App. 3d 53, 414 N.E.2d 240, wherein the courts held that the defendants were prejudiced by the admission of testimony regarding the psychiatric treatment the victims received after the incidents. Indeed, the court in *Jackson* emphasized that the trial court acted properly in keeping from the jury any information re-

garding psychiatric treatment of the victim after the incident. 203 Ill. App. 3d at 14, 560 N.E.2d at 1027.

In the instant case, consistent with the holding in *Jackson*, the trial court erred in allowing the complainant to testify concerning the rape treatment group and to her receiving psychiatric care. As the aforementioned cases point out, such testimony is highly prejudicial and has only recently been allowed into evidence for the limited purpose of establishing a diagnosis of rape trauma syndrome by a qualified expert witness on that subject. The State in the instant case should have presented the testimony of an expert witness on rape trauma syndrome in order to connect the complainant's testimony regarding post-incident effects, including her having to seek psychiatric care, with the somewhat accepted psychological disorder. In any case, the court's reliance on the *Douglas* case under the circumstances presented herein is misplaced.

I must respectfully dissent.