2016 IL App (1st) 140421
No. 1-14-0421
May 24, 2016

SECOND DIVISION

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 5072 |
| | ) | |
| LEVIE BRYANT, | ) | Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE NEVILLE delivered the judgment of the court, with opinion.
Presiding Justice Pierce concurred in the judgment and opinion.
Justice Hyman specially concurred, with opinion.

**OPINION**

¶ 1 Following a jury trial, Levie Bryant, the defendant, was convicted of being an armed

habitual criminal (720 ILCS 5/24-1.7(a)(2) (West 2012)) and was sentenced to 21 years in

prison. The trial court also imposed $779 in fines and fees. On appeal, defendant contends his

sentence should be reduced because the trial court imposed a sentence near the statutory

maximum without explaining its reasons for that sentence or considering his rehabilitative

potential. In addition, defendant contends that the trial court incorrectly assessed a $100 trauma fund fine (730 ILCS 5/5-9-1.10 (West 2012)) against him. We affirm defendant's conviction and sentence but vacate the trauma fund fine and order the clerk of the circuit court to correct the fines and fees order.

¶ 2 Defendant was charged in one count with being an armed habitual criminal and in another count with aggravated unlawful use of a weapon for possessing a firearm without a firearm owner's identification (FOID) card. At trial, the State presented testimony that at approximately 4:30 p.m. on February 28, 2012, Chicago police officers responded to a radio call of a foot chase in progress at 43rd Street and Michigan Avenue in Chicago. The responding officers arrived in the vicinity of 4236 South Michigan Avenue and spoke to the officers at the scene. Defendant and two other individuals were seen standing on the sidewalk, and when police approached, defendant ran away while holding his side. After apprehending defendant, police recovered a loaded weapon near a fence.

¶ 3 The parties stipulated that Shehab Haleem would testify he owned Quick and Fair Auto Repair at 4250-4256 South Michigan Avenue at the time of these events and that the shop had a video surveillance camera system. Haleem would testify, *inter alia*, that one camera was pointed at the alley behind the shop which runs parallel to South Michigan and recorded footage from the previous day that was copied by police on February 29. The surveillance camera footage, which showed defendant tossing a weapon over a fence, was introduced into evidence and played for the jury.

¶ 4    The State introduced into evidence a self-authenticating document from the Illinois State Police showing that as of March 29, 2012, defendant was never issued a FOID card. It was further stipulated that defendant had two qualifying offenses under the armed habitual criminal statute: aggravated discharge of a firearm in case No. 02 CR 18087 and unlawful use of a weapon by a felon in case No. 97 CR 26825.

¶ 5    The defense did not present any witnesses. The jury found defendant guilty on both counts, and the trial court entered judgment on the verdict.

¶ 6    At sentencing, the prosecutor reviewed the facts of the case and defendant's criminal history. The prosecutor stated that defendant was convicted of attempted aggravated arson in 1994 and was sentenced to five years in prison and was convicted of unlawful use of a weapon by a felon in 1997 and was sentenced to two years in prison. Defendant was convicted of possession of a controlled substance in 1999 and 2001 and was sentenced to 18 months and 24 months in prison, respectively. Defendant was convicted of aggravated discharge of a firearm in 2002 and received an 11-year sentence.

¶ 7    The prosecutor noted that defendant had been convicted of several weapons-related offenses and further asserted "the defendant has shown a history of upon being convicted and sentenced for an offense, upon being released, he picked up a sentence immediately following that – within months and then going back into the penitentiary and repeating the same cycle at least four prior times."  The prosecutor stated "[b]ased upon this defendant's history with guns and the amount of felony convictions," the State requested a sentence of 22 years.

¶ 8    In mitigation, defendant's counsel noted defendant came from a "supportive family" and had a minor child. Counsel also told the court defendant had work experience and the goal of obtaining his general equivalency diploma. Counsel pointed out defendant's offense did not result in serious physical harm to anyone and requested a sentence "closer to the minimum."

¶ 9    The court asked defendant if he wished to make a statement in allocution, and defendant responded no. The court then stated:

> "For the purposes of sentencing, the court has considered the evidence at trial, the gravity of the offense, the presentence investigation report, the financial impact of incarceration[.] *** The court has also considered all evidence, information, and testimony in aggravation and mitigation, any substance abuse issues and treatment, the potential for rehabilitation, the possibility of sentencing alternatives, and all hearsay presented and deemed relevant and reliable."

The court merged the aggravated unlawful use of a weapon count into the armed habitual criminal count and sentenced defendant to 21 years in prison.

¶ 10    Immediately after the court imposed that sentence, defendant's counsel filed a motion to reconsider the sentence. Counsel recounted this case involved "a chase where Mr. Bryant allegedly discarded a weapon," as opposed to a situation where defendant turned and fired at the officers or other people nearby. Counsel argued a 21-year term was excessive "in light of the testimony and facts that were introduced at trial," noting defendant's longest previous sentence had been 11 years. Counsel again asked that defendant be sentenced to a term "closer to the minimum for the offense of armed habitual criminal."

¶ 11    In denying the defendant's motion to reduce sentence, the court stated:

"It is apparent to the court that – Mr. Levie Bryant does not care or have any concern for the law or taking any thought with respect to his previous sentences. He has only continued to rachet [*sic*] up his conduct and therefore poses a serious danger and risk."

¶ 12    On appeal, defendant contends the trial court abused its discretion in imposing a 21-year sentence in this case. He argues the trial court failed to explain the basis of his sentence and did not consider his rehabilitative potential or his non-confrontational behavior in the instant offense. He further contends his sentence should have been mitigated by the fact that this offense was less serious than his prior crimes. Defendant contends this court should exercise its authority to reduce his sentence to the statutory minimum of six years or vacate his sentence and remand to the trial court for a sentencing hearing at which the trial court is ordered to consider his rehabilitative potential. We find that defendant is not entitled to either of those alternatives.

¶ 13    Defendant was convicted of being an armed habitual criminal based upon his possession of a firearm while having previously been convicted of aggravated discharge of a firearm and unlawful use of a weapon. 720 ILCS 5/24-1.7(a)(2) (West 2012). Being an armed habitual criminal is a Class X felony subject to a sentencing range of between 6 and 30 years in prison. 720 ILCS 5/24-1.7(b) (West 2012); 730 ILCS 5/5-4.5-25(a) (West 2012).

¶ 14    Throughout defendant's brief, he acknowledges the established body of law regarding sentencing and also concedes particular facts that support the sentence imposed. To begin, defendant concedes his sentence was within the statutory limits but maintains his sentence was

"exceedingly harsh" and at the "high end" of the Class X sentencing range. A sentence within statutory limits will not be deemed an abuse of discretion unless it is at variance with the spirit and purposes of the law or is manifestly disproportionate to the nature of the offense. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010). In determining an appropriate sentence, relevant considerations include the nature of the crime, the protection of the public, deterrence and punishment, as well as the defendant's rehabilitative prospects. *People v. Kolzow*, 301 Ill. App. 3d 1, 8 (1998). "[T]he trial court is in the best position to fashion a sentence that strikes an appropriate balance between the goals of protecting society and rehabilitating the defendant." *People v. Risley*, 359 Ill. App. 3d 918, 920 (2005).

¶ 15 Defendant contends "there is no evidence in the record that the trial court considered rehabilitation." That contention is contradicted by the record on appeal. As quoted above, the trial court expressly stated its consideration of defendant's potential for rehabilitation, along with defendant's pre-sentence investigation report, the evidence and the "gravity of the offense."

¶ 16 Next, defendant contends the court did not enunciate specific facts in support of his 21-year sentence. However, he concedes a sentencing court is not required to "recite and assign value" to each factor in aggravation and mitigation. See *People v. Brazziel*, 406 Ill. App. 3d 412, 434 (2010); *People v. Spicer*, 379 Ill. App. 3d 441, 469 (2007); *People v. Jackson*, 375 Ill. App. 3d 796, 802 (2007). A reviewing court presumes the trial court considered only appropriate factors in sentencing unless the record affirmatively shows otherwise. *People v. Daly*, 2014 IL App (4th) 140624, ¶ 29.

¶ 17 A sentencing court is not required to award a defendant's rehabilitative potential "greater weight than the seriousness of the offense." *Alexander*, 239 Ill. 2d at 214, quoting *People v. Coleman*, 166 Ill. 2d 247, 261 (1995). The armed habitual criminal statute was intended to help protect the public from the threat of violence based on the State's "legitimate interest in protecting the public from the dangers posed by felons in possession of firearms." *People v. Davis*, 408 Ill. App. 3d 747, 750 (2011); see also *People v. Johnson*, 2015 IL App (1st) 133663, ¶ 27. In denying the motion to reconsider sentence, the trial court noted that defendant had continued to commit crimes without "any concern for the law" and without any regard for his previous offenses and sentences. The court rejected defense counsel's contention that the act of discarding the weapon somehow mitigated the seriousness of defendant's offense and instead found defendant "poses a serious danger and risk."

¶ 18 Defendant then focuses on his prior criminal offenses, acknowledging his lengthy criminal record but arguing his mere possession of a weapon in the instant offense represents a "ratcheting down" of his conduct. He emphasizes his most recent previous conviction was for aggravated discharge of a firearm and he points out that in the instant crime, he did not confront police or shoot the gun but instead fled from the police to avoid confrontation. After considering defendant's criminal history, we do not find that the facts in those cases support a lesser sentence in his case. Defendant disregards the fact that he was convicted of being an armed habitual criminal based on his commission and conviction of two prior qualifying felonies of aggravated discharge of a firearm and unlawful use of a weapon by a felon. Therefore, defendant's conduct in the instant case did not form the sole basis of his conviction for being an armed habitual

criminal; rather, his conviction was based on his possession of a firearm in this case together with his two prior qualifying offenses. See *People v. Davis*, 405 Ill. App. 3d 585, 591 (2010) (prior qualifying offenses are elements of armed habitual criminal).

¶ 19    Furthermore, we disagree with defendant's characterization of his sentence as being on the "high end" of the applicable sentencing range. The midpoint of the Class X sentencing range of between 6 and 30 years is 18 years, and thus, even though defendant's 21-year sentence is the higher half of that range, it is only three years above the midpoint of the sentencing range and, in fact, is closer to the midpoint than to the maximum. The trial court was well within its discretion to impose a sentence in the higher half of the sentencing range based on all of the sentencing factors presented.

¶ 20    In conclusion on defendant's contentions relating to his sentence, the trial court did not abuse its discretion in imposing a 21-year term in this case for the Class X felony offense of being an armed habitual criminal. That sentence was well within the applicable statutory range, and the court stated its consideration of all relevant factors in arriving at a sentence, including defendant's rehabilitative potential. Moreover, the court was not required to afford defendant's potential for rehabilitation more weight than the seriousness of defendant's crime, which was preceded by two other convictions for offenses involving weapons.

¶ 21    Defendant's remaining contention on appeal is that the $100 trauma fund fine assessed against him should be vacated. The State agrees that the trauma fund fine only applies to specified firearm offenses that do not include the armed habitual criminal statute. See 730 ILCS 5/5-9-1.10 (West 2012); *People v. Williams*, 394 Ill. App. 3d 480, 483 (2009).

¶ 22    The propriety of a court-ordered fine or fee is reviewed *de novo*. *People v. Elcock*, 396 Ill. App. 3d 524, 538 (2009). Given that the fine in question does not apply in this case, this court on appeal may modify the fines and fees order without remanding the case back to the trial court, pursuant to Illinois Supreme Court Rule 615(b)(1) (eff. Aug. 27, 1999) which provides that "[o]n appeal the reviewing court may * * * modify the judgment or order from which the appeal is taken."

¶ 23    Accordingly, we vacate the $100 trauma fund fine and direct the clerk of the circuit court to amend the fines and fees order to reflect a corrected total of $679. The judgment of the trial court is affirmed in all other respects.

¶ 24    Conviction and sentence affirmed; $100 trauma fund fine vacated.

¶ 25    JUSTICE HYMAN, specially concurring.

¶ 26    Precedent requires me to concur with the majority's holding that the sentencing court did not err in imposing Bryant's sentence. I write separately, however, to encourage sentencing courts to go beyond the precedent and as a matter of course explain to a criminal defendant the reasons behind the sentence.  Bryant received 21 years in prison without a hint as to how the judge arrived at that number. I believe that criminal defendants—indeed, all parties—deserve to be told why the judge ruled as he or she did. Simply reciting the statutory factors informing a sentencing decision is manifestly unfair to the defendant and dishonors what simple justice would dictate.

¶ 27    Before sentencing Bryant, the trial court stated that it had considered the evidence at trial, the gravity of the offense, the presentence investigation report, the financial impact of

incarceration, aggravating and mitigating evidence, substance abuse issues and treatment, potential for rehabilitation, possible sentencing alternatives, and reliable hearsay. This list is a near-perfect recitation of section 5-4-1 of the Unified Code of Corrections )730 ILCS 5/5-4-1(a) (West 2012)), which directs courts to consider these factors at sentencing.

¶ 28    The sentencing court did not state for the record how it was balancing the aggravating and mitigating evidence and offered no reasoning for Bryant's 21-year sentence. As the majority correctly points out, precedent holds that the trial court need not do more. See, *e.g., People v. Burgess*, 2015 IL App (1st) 130657, ¶ 227 (judge not required to set forth every reason or specify weight given each factor considered in sentencing decision). And yet, another statute—730 ILCS 5/5-4.5-50(c) (West 2012)—states that a judge sentencing a defendant for a felony "shall set forth his or her reasons for imposing the particular sentence entered in the case, as provided in Section 5-4-1." How can our precedent directly conflict with the statute?

¶ 29    The answer lies in *People v. Davis*, 93 Ill. 2d 155 (1982). There, our Supreme Court reviewed an older version of the same statute. Ill. Rev. Stat. 1979, ch. 38, ¶ 1005-8-1(b) ("[t]he sentencing judge in each felony conviction shall set forth his reasons for imposing the particular sentence he enters in the case"). At issue was whether "shall" was mandatory or directory: *must* the trial court specify the reasons, or is it optional? *Davis*, 93 Ill. 2d at 162. The *Davis* court concluded that a mandatory requirement would amount to the legislature unconstitutionally invading the "inherent power of the judiciary," and held "shall" to be directory. *Id*. Thus, by not providing reasons, a sentencing court conforms with the statute despite the seemingly straightforward and literal sense of "shall" as used in the statute. *Id*. at 163. (The *Davis* court

was trying to avoid holding the statute unconstitutional, but its conclusion deftly twists the common understanding of "shall" into a veritable Möbius strip.)

¶ 30    Unsurprisingly, after *Davis*, reviewing courts tended to hold that sentencing courts could impose sentences without giving any indication of their reasoning.  See, *e.g., People v. Spicer*, 379 Ill. App. 3d 441, 468-69 (2007); *People v. Jackson*, 375 Ill. App. 3d 796, 802 (2007); *People v. McDonald*, 322 Ill. App. 3d 244, 250-51 (2001); *People v. Williams*, 223 Ill. App. 3d 692, 701 (1992); see also *Jackson*, 375 Ill. App. 3d at 807 (Wright, J., concurring in part and dissenting in part) ("In the two decades since our supreme court's decision in *Davis*, trial courts seem to have substituted the flexibility of the permissive 'shall' with a practice of creating records that 'need not' demonstrate careful reflection prior to sentencing.").  This law controls Bryant's case.  He heard both the State and his own attorney submit evidence in aggravation and mitigation, but has not the slightest clue as to which evidence the court found compelling or why 21 years was the appropriate sentence for Bryant's crime.  The trial court may well have gone through extensive internal analysis, but absent any explanation of the factual basis for the sentence, for Bryant— and the public—his sentence lacks transparency and justification, though the sentencing judge did not intend to do so.

¶ 31    One member of the *Davis* court foresaw this result.  In his dissent, the bold and brilliant Justice Seymour Simon noted that if judges were not required to put their reasoning into the record, "the sentencing procedure *** may appear to be arbitrary and capricious.  Numbers may seem to have been taken out of a hat. *** The result will be the creation in the eyes of the public of an imperial judiciary ***." *Davis*, 93 Ill. 2d at 168 (Simon, J., dissenting).  Justice Simon's

warning remains as profound, and as urgent, today as when he wrote it.  See also Charles R. Richey, *Appellate Review of Sentencing: Recommendation for a Hybrid Approach*, 7 Hofstra L. Rev. 77, 84 (1978) ("Trial judges have engaged in this broad discretionary exercise without explaining the reasons for the sentences they have imposed.  The result has been a lack of uniformity and predictability in the decisions of sentencing judges.").

¶ 32    Our criminal defendants deserve better.  It is not enough for judges to make fair, unbiased, and particularized sentencing decisions; criminal defendants (and the public) must perceive judges as making fair, unbiased, and particularized sentencing decisions. That cannot be achieved as long as judges don't need to justify or legitimatize their actions.  This is why the American Bar Association has long recommended that sentencing judges "always provide an explanation of the court's reasons sufficient to inform the parties, appellate courts, and the public of the basis for the sentence."  ABA Standards for Criminal Justice §18-5.19(D)(b)(i) (3d ed. 1994).

¶ 33    It is not a question of whether a defendant agrees with the ultimate sentence.  (Most defendants won't.)  Research shows that when observers are deciding whether a judge's decisions are legitimate, the primary factor is whether they believe the judge made that decision through a fair procedure.  Tracey L. Meares & Tom R. Tyler, *Justice Sotomayor and the Jurisprudence of Procedural Justice*, 123 Yale L.J. Forum 525, 527 (2014) ("procedural justice matters more than whether or not people agree with a decision or regard it as substantively fair").  And it goes beyond one individual defendant; the judiciary gains legitimacy in society's eyes when all people can see decisions being made fairly.  Tom R. Tyler & Justin Sevier, *How Do the Courts Create*

*Popular Legitimacy?: The Role of Establishing the Truth, Punishing Justly, and/or Acting Through Just Procedures*, 77 Alb. L. Rev. 1095, 1102 (2014). That legitimacy has far-reaching benefits; "people are both more likely to obey law and to accept decisions when they view the courts as legitimate." *Id*. at 1104.

¶ 34    If fairness to the parties and society's scrutiny does not influence trial courts to be more forthcoming, there is an additional reason. We appellate court justices are often asked to review trial court sentencing decisions. But, long-standing case law constrains us from overturning a sentence imposed within the statutory range unless the sentencing court abuses its discretion. *People v. Hauschild*, 226 Ill. 2d 63, 90 (2007). At the very least, though, knowing the sentencing court's reasoning benefits defendant, the State, the public, and the appellate court in assessing whether the sentence was not arbitrary or unjust, and whether error or a sentencing court's personal feelings or biases affected the sentencing process.

¶ 35    I hope our supreme court sees fit to consider this issue and formulate a court rule to get around its decision in *Davis*. Until then, I urge sentencing courts to make a record not as much for the appellate court as for the integrity of the criminal justice system.