2020 IL App (1st) 180012-U

SIXTH DIVISION
February 14, 2020

No. 1-18-0012

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 2154 |
| | ) | |
| ROLANDIS WEATHERS, | ) | Honorable |
| | ) | Mauricio Araujo, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Connors and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for aggravated discharge of a firearm is affirmed because the State's evidence was sufficient to establish intent. Defendant's nine-year sentence for being an armed habitual criminal and seven-year sentence for aggravated discharge of a firearm are affirmed where defendant has not demonstrated that the trial court abused its discretion in sentencing him.

¶ 2    After a bench trial, defendant Rolandis Weathers was found guilty of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2016)) and of aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2014)). He was sentenced to concurrent terms of nine years' and seven years' imprisonment, respectively. He appeals, arguing that his conviction for

aggravated discharge of a firearm should be reversed because the evidence was insufficient to demonstrate he knowingly or intentionally fired at a vehicle he knew or should have known was occupied by a person. Mr. Weathers also argues that his sentences are excessive because his conduct was not serious and that the court failed to appropriately weigh his rehabilitative potential and the other mitigating factors. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Mr. Weathers was arrested on January 16, 2016, and charged with nine counts of firearm-related offenses. The State dismissed all charges except for one count of being an AHC and one count of aggravated discharge of a firearm.

¶ 5     At trial, Keith Moore testified that he was walking his dog near the 5400 block of West Chicago Avenue at approximately 2:50 p.m. on January 16, 2016. He saw a man he knows as "Ro-Ro" standing with two other men in a laundromat parking lot approximately 25 feet away. Mr. Moore identified "Ro-Ro," whom he had known for "[m]aybe" a "lifetime," as Mr. Weathers in court. Mr. Moore, who had an unobstructed view, saw Mr. Weathers "raise a gun and start firing at a red car as it came southbound on Lotus." Mr. Weathers fired four to five times and then ran up a flight of stairs and into an apartment above the laundromat. Mr. Moore called the police. The prosecutor showed Mr. Moore a photograph, which he identified as an accurate depiction of Mr. Weathers at the time of the shooting. Mr. Moore acknowledged having three felony convictions.

¶ 6     On cross-examination, Mr. Moore agreed that he may have seven felony convictions. He was standing behind a fence the entire time he viewed Mr. Weathers and Mr. Weathers's companions. He did not recognize the other two individuals. Mr. Moore was outside for approximately 20 to 30 minutes before the incident. On redirect, Mr. Moore stated that his view was not obstructed by the fence or any vehicles between him and Mr. Weathers.

¶ 7     Chicago police officer Michael Walsh testified that on January 16, 2016, he and his partner received a call of shots fired near a laundromat. The dispatch identified the suspect as "Ro-Ro." Officer Walsh knew that Mr. Weathers, whom he identified in court, used that nickname. The officers responded to the laundromat and spoke with the owner, Afram Hamourahi, who showed them a surveillance video from the parking lot.

¶ 8     After viewing the video, the officers went to the second-floor apartment above the laundromat. Mr. Weathers was inside, wearing black pants with red shorts underneath. The officers arrested Mr. Weathers. Other officers searched the parking lot and recovered one shell casing. No firearm was recovered.

¶ 9     At the Fifteenth District police station, Officer Murphy Mirandized Mr. Weathers, who agreed to speak with the officers. During the conversation, Officer Walsh asked Mr. Weathers what would happen if someone from the red vehicle turned up with a gunshot wound. Mr. Weathers responded that he spoke to the driver immediately following the incident and no one was hurt.

¶ 10    The State published the surveillance video to the court, which is included in the record on appeal. The video, in part, depicts three men standing in a parking lot and a red vehicle driving nearby. One of the men, dressed in dark pants with red shorts underneath, discharges a firearm towards the street. When the video concluded, the State showed Officer Walsh the photograph introduced during Mr. Moore's testimony. Officer Walsh identified it as a still from the surveillance video. He testified that Mr. Weathers at the time of arrest and the shooter in the video were wearing the "exact same" clothing.

¶ 11    On cross-examination, Officer Walsh admitted that Mr. Weathers was never tested for gunshot residue. Officer Walsh did not know how long the shell casing was in the parking lot prior to recovery.

¶ 12    The State entered a stipulation that Mr. Hamourahi would testify that he owned the laundromat and installed surveillance cameras in the parking lot. The surveillance equipment was functioning properly on January 16, 2016. The video played in court was the same footage he showed the police immediately following the shooting.

¶ 13    The State also entered certified copies of Mr. Weathers's prior convictions for manufacture or distribution of a lookalike substance from case No. 11 CR 14666-02, and aggravated unlawful use of a weapon from case No. 14 CR 19164-01.

¶ 14    During closing arguments, defense counsel argued that Mr. Moore was an incredible witness, the video showed three men dressed similarly, which called Mr. Moore's identification testimony into question, and no physical evidence tied Mr. Weathers to the crime. The State responded that Mr. Moore was credible and unimpeached, and that Mr. Weathers's clothing at the time of arrest matched that worn by the shooter in the surveillance video.

¶ 15    The court found Mr. Weathers guilty of being an AHC and aggravated discharge of a firearm, emphasizing (1) the content of the video, (2) Officer Walsh's testimony that Mr. Weathers's clothing at the time of arrest matched the shooter's in the video, and (3) Mr. Moore's testimony, which the court described as the "most damning."

¶ 16    The court denied Mr. Weathers's posttrial motion and the matter proceeded to sentencing. The presentence investigation (PSI) report revealed that Mr. Weathers was 22 years old on the date of the incident. He had juvenile adjudications for damage to property and violation of supervision, and convictions as an adult for aggravated unlawful use of a weapon, aggravated assault of a peace officer, manufacture or distribution of a lookalike substance, obstructing an officer, soliciting unlawful business, and two instances of driving on a suspended license. His longest sentence was three years' incarceration. Mr. Weathers was raised by his mother and her boyfriend, and had little

contact with his biological father. He had "good" relationships with his two children and his siblings. In school, he suffered from a learning disability and left during his freshman year of high school. At the time of arrest, he was enrolled in a GED program and performed janitorial work.

¶ 17     In aggravation, the State highlighted Mr. Weathers's criminal history and emphasized that he committed the present offenses while on parole for an incident in which he pointed a firearm at a police officer. Based on the "seriousness" of Mr. Weathers's conduct and the need to "protect society," the State asked for a 15-year sentence.

¶ 18     In mitigation, defense counsel argued that Mr. Weathers had significant rehabilitative potential because he was attempting to obtain his GED, worked as a janitor, and had strong familial support. Counsel requested the minimum sentence of six years. In allocution, Mr. Weathers thanked his mother and his attorney, and apologized to the court for bringing a "mess" to the courtroom.

¶ 19     The court sentenced Mr. Weathers to concurrent terms of nine years for being an AHC and seven years for aggravated discharge of a firearm, followed by three years of mandatory supervised release. It stated that it considered the trial evidence, the history, character, and attitude of Mr. Weathers, the evidence and arguments in mitigation and aggravation, and the statement by Mr. Weathers.

¶ 20     In aggravation, the court found that Mr. Weathers's conduct "caused or threatened serious physical harm." The court discussed Mr. Weathers's history of delinquency, the fact that he discharged a weapon, and the need for deterrence as aggravating factors.

¶ 21     In mitigation, the court noted that, "technically," Mr. Weathers's conduct did not cause serious or physical harm to another. The court also said, "I will be nice and say that the defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to

another." The court also said that Mr. Weathers's attitude at sentencing indicated that he was unlikely to reoffend. The court noted the Mr. Weathers had some hardship in his background, although the court also said it did not know if it was "necessarily excessive hardship."

¶ 22    The court denied Mr. Weathers's motion to reconsider sentence.

¶ 23                                    II. JURISDICTION

¶ 24    Mr. Weathers was sentenced on November 30, 2017, and timely filed his notice of appeal on December 4, 2017. This court has jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. Dec. 11, 2014), governing appeals from final judgments of conviction in criminal cases.

¶ 25                                    III. ANALYSIS

¶ 26        A. The Evidence Was Sufficient to Prove Aggravated Discharge of a Firearm

¶ 27    On appeal, Mr. Weathers first argues that the State failed to prove aggravated discharge of a firearm because it did not show he knowingly or intentionally shot at a vehicle he knew or should have known was occupied by a person.

¶ 28    "When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the required elements beyond a reasonable doubt." *People v Newton*, 2018 IL 122958, ¶ 24. The reviewing court must not substitute its judgment for that of the trial court regarding the "weight of the evidence or the credibility of the witnesses" because it is the trial court's responsibility to "resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *People v. Gray*, 2017 IL 120958, ¶ 35. Reversal is inappropriate unless the evidence was so insufficient or incredible that it creates reasonable doubt.

*Id.* All reasonable inferences are drawn in favor of the State, and the reviewing court is not required to " 'search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.' " *People v. Hardman*, 2017 IL 121453, ¶ 37 (quoting *People v. Jackson*, 232 Ill. 2d 246, 281 (2009)).

¶ 29   To prove aggravated discharge of a firearm, the State must show that a defendant "knowingly or intentionally" discharged "a firearm *** in the direction of a vehicle he or she knows or reasonably should know to be occupied by a person." 720 ILCS 5/24-1.2(a)(2) (West 2014). The statute does not require that a gunshot strike the vehicle, only that the defendant aimed at the vehicle and fired. *People v. Daheya*, 2013 IL App (1st) 122333, ¶ 64.

¶ 30   Mr. Weathers argues that the evidence was insufficient to demonstrate that he intended to shoot at the red vehicle. He does not suggest that it was anything but apparent that the vehicle was occupied, since it was moving down the street. Rather, Mr. Weathers contends that the surveillance video only depicts the general direction in which he was shooting and cites *People v. Charleston*, 278 Ill. App. 3d 392 (1996), for the proposition that this evidence is insufficient to establish intent. See *id.* at 398 (finding that intent was not established without evidence about where the defendant aimed his shots). Additionally, Mr. Weathers argues that Mr. Moore only testified it "appeared" Mr. Weathers was shooting at a moving red vehicle, and no evidence establishes that the red vehicle depicted in the surveillance footage was the same vehicle that Mr. Moore testified about.

¶ 31   A rational factfinder could have found the State's evidence sufficient to establish Mr. Weathers's intent to shoot at a vehicle he knew to be occupied. The State did not need to prove that Mr. Weathers hit the red vehicle, only that he aimed at it and pulled the trigger. *Daheya*, 2013 IL App (1st) 122333, ¶ 64 (citing *People v. Ellis*, 401 Ill. App. 3d 727, 731 (2010)). Mr. Moore's testimony, which was unchallenged, unimpeached, and reasonably credited by the trial court, was

that he saw Mr. Weathers "raise a gun and start firing at a red car as it came southbound on Lotus." This testimony differentiates the present case from *Charleston*, where there was no testimony regarding any target towards which the defendant discharged the firearm. The court here could also make the reasonable inference that the surveillance video's depiction of a moving red vehicle corroborated Mr. Moore's testimony. See *Jackson*, 232 Ill. 2d at 281 ("trier of fact is not required to disregard inferences which flow normally from the evidence before it"). Viewed in the light most favorable to the State, there was sufficient evidence for the trial court to find Mr. Weathers intended to discharge a firearm at a vehicle that he knew had a person in it.

¶ 32         B. The Trial Court Did Not Abuse Its Discretion in Sentencing

¶ 33    Mr. Weathers also argues that his sentences for being an AHC and aggravated discharge of a firearm are excessive because the trial court did not adequately consider his rehabilitative potential and other mitigating factors.

¶ 34    A sentencing court is required to consider both the seriousness of the offense and rehabilitation. Ill. Const. 1970, art. 1, § 11. Sentencing decisions are given great deference on review and will only be altered for abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). This is because the trial court is in a much better position to judge a defendant's "credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. The reviewing court cannot substitute its judgment for that of the trial court or rebalance the relevant factors. *Alexander*, 239 Ill. 2d at 213 (citing *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)). Sentences within the statutory range can only be deemed excessive and the result of an abuse of discretion "where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210.

¶ 35    "A defendant's rehabilitative potential *** is not entitled to greater weight than the seriousness of the offense." *People v. Coleman*, 166 Ill. 2d 247, 261 (1995). The sentencing court is presumed to have considered any mitigating factors, absent a showing from the record. *People v. Thompson*, 222 Ill. 2d 1, 45 (2006).

¶ 36    Mr. Weathers was sentenced to concurrent sentences of  nine years for being an AHC, a Class X felony with a sentencing range of 6 to 30 years (720 ILCS 5/24-1.7(b) (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016)), and seven years for aggravated discharge of a firearm, a Class 1 felony with a sentencing range of 4 to 15 years (720 ILCS 5/24-1.2(a)(2), (b) (West 2014); 730 ILCS 5/5-4.5-30(a) (West 2016)). Thus, his sentences are within the statutory ranges and can only be reversed on a showing that they greatly vary from the spirit of the law or are manifestly disproportionate to his conduct. *Stacey*, 193 Ill. 2d at 210. Although Mr. Weathers argues that the sentence was excessive, both of the sentences imposed were towards the low end of the sentencing ranges and were to be served concurrently.

¶ 37     Mr. Weathers argues that while the seriousness of the crime is an important factor, in his case no one was injured. But the evidence showed that Mr. Weathers discharged a firearm at a moving vehicle in daylight on a public street. As the trial court recognized, this conduct clearly posed a risk to both the vehicle's occupants and innocent bystanders. That no one was harmed means Mr. Weathers and the public were fortunate, not that Mr. Weathers's conduct was not serious.

¶ 38    In reference to Mr. Weathers's sentence for being an AHC, the legislature has determined that firearm possession by AHC-eligible individuals is dangerous as a matter of public policy, making Mr. Weathers's conduct here inherently serious. See *People v. Bryant*, 2016 IL App (1st) 140421, ¶ 17 (AHC statute was designed to protect public from dangers posed by convicted felons

possessing firearms). On this record, the court did not abuse its discretion in treating these offenses as "serious."

¶ 39    Mr. Weathers argues that the trial court failed to consider his rehabilitative potential and other mitigating factors. During the hearing, the court stated that it considered all factors in mitigation and aggravation. The court specifically mentioned that Mr. Weathers's actions did not cause serious or physical harm to another and that he was going to assume that Mr. Weathers did not intend to cause such harm. The court also noted that Mr. Weathers had hardship in his background and that his attitude at sentencing indicated that he was unlikely to reoffend.

¶ 40    Mr. Weathers complains that the court did not specifically discuss other mitigating factors, such as Mr. Weathers's GED classes or that he was working and had family support. But the court is not required to list each specific factor it considered in fashioning a sentence. See *People v. Shields*, 298 Ill. App. 3d 943, 951 (1998). Rather, the sentencing court will be presumed to have considered all relevant mitigating factors absent some indication, other than the sentence imposed, that this did not happen. *Thompson*, 222 Ill. 2d at 45. There is no such indication here and, as noted above, the sentences imposed were concurrent and toward the lower end of the sentencing range. We are not free to reweigh those factors and impose a different sentence absent an abuse of discretion. *People v. Ealy*, 2019 IL App (1st) 161575, ¶ 55. We find no such abuse of discretion in this case.

¶ 41                                    IV. CONCLUSION

¶ 42    In sum, the evidence at trial established the elements of aggravated discharge of a firearm, and the trial court did not abuse its discretion in imposing sentence. Mr. Weathers's convictions are affirmed.

¶ 43    Affirmed.