2024 IL App (1st) 220028-U

No. 1-22-0028

Order filed March 15, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 16999 |
| | ) | |
| DONALD HAYWOOD, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's 29-year sentence for first-degree murder is affirmed.

¶ 2    Defendant Donald Haywood appeals his 29-year sentence for first-degree murder. Originally, defendant was sentenced to 55 years for a murder that he committed at age 17. This court reversed the circuit court's order denying defendant leave to file his successive post-conviction petition and remanded for reconsideration in light of *Miller v. Alabama*, 567 U.S. 460 (2012). See *People v. Haywood*, 2016 IL App (1st) 142833. In this appeal, defendant now argues that the circuit court abused its discretion because (1) the circuit court failed to fully consider the

mitigating sentencing factors applicable to juvenile offenders set forth in the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2020)) and (2) the circuit court imposed an excessive sentence. For the following reasons, we affirm.

¶ 3                          I. BACKGROUND

¶ 4     Defendant and his older brother, Karl Haywood, were each charged with multiple offenses stemming from the shooting death of Ruby Lasecki in 2003. At defendant's jury trial, the State introduced defendant's videotaped statement to the police into evidence. In that statement, defendant recounted the following facts.

¶ 5     On July 5, 2003, Karl called a cab company from his residence on Chicago's South Side. He intended to rob the cabdriver, and defendant agreed to assist and to act as a lookout. Prior to the robbery, Karl gave defendant a gun, which defendant hid in his waistband. Once in the cab, defendant returned the gun to Karl. Karl then ordered Lasecki at gunpoint to drive into a parking lot and to hand over her money and jewelry. Karl gave defendant the gun and Lasecki's belongings. Following the robbery, Karl repeatedly ordered defendant to shoot Lasecki, but defendant refused. Karl took the gun back from defendant. As defendant started to walk away from the vehicle, he heard Lasecki say "[D]on't shoot" and try to sound the horn of her vehicle. Defendant then heard a single gunshot. Karl caught up with defendant, and they both ran through an alley as Karl gave defendant the gun again. Later, defendant threw the gun away.

¶ 6     The jury found defendant guilty of first-degree murder and the circuit court sentenced him to 55 years of imprisonment. On direct appeal, this court affirmed defendant's conviction. *People v. Haywood*, Nos. 1-05-4075, 1-06-0200 (Cons.) (2008) (unpublished order under Supreme Court Rule 23). This court also affirmed the second stage dismissal of defendant's initial *pro se* petition

for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). *People v. Haywood*, 2012 IL App (1st) 111554-U, ¶ 18.

¶ 7    In 2014, defendant filed a motion for leave to file a successive post-conviction petition under the Act. Relying on *Miller*, he argued that the court imposed a *de facto* life sentence after failing to consider factors specifically applicable to the sentencing of juveniles and that the proper remedy was a new sentencing hearing. The circuit court denied the motion. On appeal, this court reversed the denial of leave to file the *Miller* claim. *Haywood*, 2016 IL App (1st) 142833-U, ¶ 40. On remand, the circuit court stated it would undertake "a re-sentencing under Illinois law pursuant to *** *Miller*" and that, to avoid reversible error, it would not sentence defendant to more than a 40-year term.

¶ 8    Defendant's sentencing hearing was conducted over several court dates. Defendant testified that his father had died when defendant was seven years old. At age eight or nine, he witnessed the fatal shooting of his 14-year-old uncle. Defendant's mother was also shot in the incident. She thereafter began using heroin and stopped paying her bills, and Karl began dealing drugs. Post-conviction counsel argued in mitigation that defendant's mother was a "drug addict" who had "rejected" her children and left defendant "more or less" to Karl's care, that Karl had "ruled his life," that defendant had consistently taken opportunities for rehabilitation and had good prospects upon his release, and that he required medical care that was difficult to obtain in prison. The State argued in aggravation that defendant had been only five months shy of 18 years old at the time of the murder, had agreed to commit the robbery, had transported the firearm, and given it to Karl prior to the murder. Lasecki's two sons read victim impact statements.

¶ 9    In allocution, defendant stated, "I'm sorry to the victim and the families, as well as our community." He believed his continued imprisonment would be "wrong," because he was "very sick" and would receive inadequate medical treatment. He noted he was a first-time offender who had merely acted as a "look out" and been convicted under an accountability theory.

¶ 10   Before sentencing defendant, the court stated it had listened to the prosecution and defense regarding factors in aggravation and mitigation and to defendant's testimony. The court recognized that defendant was "not [his] brother" Karl:

> "I have taken into account, sir, the parameters of *** [B]*uffer* and *Miller* ***, the presentence investigation, the statutory issues in aggravation, and the statutory issues in mitigation, and the nonstatutory issues in mitigation. First of all, in considering a—the resentence, *** the main emphasis should be on the age of the convicted person at the time of the offense, and also the chances for rehabilitation. *** [Defendant] was convicted on accountability. It's certainly clear that at the time of the offense, that [defendant] did not have the adult maturity, nor the responsibility, which led to this type of conduct. He certainly was under the—and I can't emphasize this enough—the negative influence of his older brother. And I find that *** [in] allocution, he's stated regret to the victim's family. *** And I've been looking at the other elements for rehabilitation, his effort, and also his success in rehabilitating and better improving himself through the different courses that he has taken in the Illinois Department of Corrections. The idea that his sister retired from the military is going to provide support, gives insight that [defendant] has demonstrated an adult maturity at this time, and also his chances of rehabilitation are also great. A fair sentence at this time would be 29 years." (Paragraph break omitted.)

¶ 11    Defendant filed a motion to reconsider, arguing the new sentence was excessive due to his background and limited role in the offense. The circuit court denied the motion to reconsider. This timely appeal followed. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); Ill. S. Ct. R. 606 (eff. Dec. 7, 2023).

¶ 12                                    II. ANALYSIS

¶ 13    Defendant argues that the circuit court abused its discretion because (1) the circuit court failed to fully consider the mitigating sentencing factors applicable to juvenile offenders set forth in the Unified Code of Corrections (730 ILCS 5/5-4.5-105(a) (West 2020)) and (2) the circuit court imposed an excessive sentence.

¶ 14                                    A. Jurisdiction

¶ 15    This court's previous decision to remand defendant's successive post-conviction petition, while technically not vacating defendant's sentence, effectively required as much in light of *Miller* and its progeny. *Haywood*, 2016 IL App (1st) 142833, ¶¶ 2, 40. On remand, the State conceded that defendant had to be resentenced in light of *Miller*. Despite this, the circuit court did not enter an order granting post-conviction relief and vacating defendant's prior sentence, which creates a jurisdictional wrinkle. *People v. Hill*, 2022 IL App (1st) 171739-B, ¶¶ 22-26 (questioning a circuit court's jurisdiction to enter a new sentence for the defendant based on *Miller* where it failed to enter an order formally granting postconviction relief and vacating the original sentence); 725 ILCS 5/122-6 (West 2022) ("If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the judgment or sentence in the former proceedings ***."). However, the parties litigated the issue and the circuit court conducted proceedings as if defendant's prior sentence had been vacated, and by their conduct the parties revested the circuit court with jurisdiction. *Hill*, 2022 IL App (1st) 171739-B, ¶¶ 26-28.

¶ 16                                    B. Sentencing

¶ 17    Defendant argues that in sentencing him to 29 years of imprisonment, the circuit court abused its discretion because it failed to consider, or inadequately considered, the factors set forth in subsection 5-4.5-105(a), a provision of Illinois's juvenile sentencing statute that effectively codifies the mitigating factors set forth in *Miller*. See 730 ILCS 5/5-4.5-105(a) (West 2020). We do not disturb a court's sentencing decision absent an abuse of discretion. *People v. McKinley*, 2020 IL App (1st) 191907, ¶ 70. Defendant's 29-year sentence is within the statutory sentencing range for first-degree murder and is therefore presumptively proper and will not be disturbed absent an affirmative showing that it is at variance with the purpose and spirit of the law or manifestly disproportionate to the nature of the offense. 730 ILCS 5/5-4.5-20(a) (West 2020); *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 18    Defendant concedes that he failed to raise this argument in his motion to reconsider sentence, but he contends the issue is reviewable under either prong of the plain error doctrine or as a claim of ineffective assistance of counsel. Defendant's contention is unpersuasive because the argument fails on the merits.

¶ 19    We note that case law is currently unclear as to whether the circuit court was required to apply subsection 5-4.5-105(a) to this defendant, who committed his offenses on July 5, 2003. In *People v. Gunn*, 2020 IL App (1st) 170542, this court held that this "plain language" shows that subsection 5-4.5-105(a) "applies only to offenses committed on or after *** January 1, 2016," the effective date of the subsection, regardless of the sentencing date. *Id.* ¶ 153; *People v. Clark*, 2021 IL App (1st) 180523-U ¶ 130 (finding that subsection 5-4.5-105(a) was inapplicable because the offense predated 2016); but see *McKinley*, 2020 IL App (1st) 191907, ¶¶ 67, 88, 91 (holding that

the circuit court should have applied the factors of subsection 5-4.5-105(a) in reducing the defendant's previous 100-year sentence to 39 years, despite the offense occurring before 2016). We need not decide this issue since, regardless of whether the circuit court was required to consider the statutory factors, the circuit court *did* consider the statutory factors.

¶ 20    At the time of the sentencing hearing, the subsection 5-4.5-105(a) factors could be summarized as follows: (1) the juvenile offender's age, impetuosity, and level of maturity, and the presence of any cognitive or developmental disabilities; (2) whether he was subjected to outside pressure, including peer or familial pressure and negative influences; (3) his family, home environment, and educational and social background; (4) potential for or evidence of rehabilitation; (5) the circumstances of the offense; (6) his degree of participation and specific role, including his level of planning in the offense; (7) whether he was able to meaningfully participate in his defense; (8) prior juvenile or criminal history; and (9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. 730 ILCS 5/5-4.5-105(a) (West 2020).

¶ 21    Defendant acknowledges that the circuit court considered "some" of these factors but argues the court "overlooked *** or at least misapplied" them. However, it is well-settled that "a sentencing court is not required to recite and assign value to each factor in aggravation and mitigation." (Internal quotation marks omitted.) *People v. Bryant*, 2016 IL App (1st) 140421, ¶ 16; see also *People v. Jarrell*, 248 Ill. App. 3d 1043, 1051 (1993) (holding that the fact that the trial court did not articulate its process in determining the appropriateness of a given sentence does not render the sentence invalid).

¶ 22    Here, the court entered two pre-sentencing investigation orders, each requiring that the factors of subsection 5-4.5-105(a) be included. At the sentencing hearing, the court stated it considered "the [PSI reports], the statutory issues in aggravation, and *the statutory issues in mitigation*, and the nonstatutory issues in mitigation." (Emphasis added.) In discussing "[t]he guidelines," the court noted that "the main emphasis" was defendant's age at the time of the offense and his "chances for rehabilitation." The court pointedly distinguished defendant's character from Karl's and acknowledged that at the time of the offense defendant had lacked "the adult maturity" and "responsibility" which "led to this type of conduct."

¶ 23    These comments demonstrate that the circuit court considered: defendant's young age and impetuousness as compared with his elder brother Karl, the fact that defendant was subjected to peer or family pressure and negative influences, his family and home environment given that he had been in Karl's sole care, the circumstances of the offense, and defendant's lack of planning. Additionally, the PSI reports, which the circuit court said it considered, detailed defendant's susceptibility to peer and family pressure and other negative influences, as well as his family background and home environment. Defendant testified as to his background at the hearing, and defense counsel discussed it in oral argument.

¶ 24    The circuit court, having previously noted defendant's "great consistency for future rehabilitation," reiterated at the sentencing hearing that his chances for rehabilitation and his maturation since the offense were "great." The circuit court cited the willingness of his sister to support him after his release and noted her military background. The circuit court also stressed defendant's participation in rehabilitative programs while imprisoned. When, in arguing the motion to reconsider, defense counsel stressed the lack of prior criminal history, the circuit court

observed that defendant had argued this in allocution. Finally, the circuit court noted that defendant expressed remorse in allocution.

¶ 25 The only statutory factor unaddressed was the defendant's ability to meaningfully participate in his own defense. 730 ILCS 5/5-4.5-105(a)(7) (West 2020). However, defendant was of age at the time of trial, and, as he concedes in his brief, "[t]here was no evidence that [he] was unable to participate in his defense."

¶ 26 In sum, the record, read as a whole, reflects that the court properly applied the factors of subsection 5-4.5-105(a).

¶ 27 Next, defendant argues that his sentence is excessive because the court did not cite aggravating factors and because the sentence exceeds the statutory minimum and fails to reflect his limited role in the offense, strong rehabilitative potential, and traumatic personal history. He argues, based on the mitigating factors and evidence, that any presumption or deference normally accorded to a sentence is "rebutted" here by the mitigating evidence.

¶ 28 "Where mitigating evidence is presented to the trial court during the sentencing hearing, we may presume that the trial court considered it, absent some indication, other than the sentence itself, to the contrary." *People v. Hill*, 408 Ill. App. 3d 23, 30 (2011). Here, the mitigating evidence was presented at sentencing, including the PSI report recounting defendant's history and the evidence of his rehabilitation, and it was argued by defendant's counsel. Defendant points to nothing in the record to rebut the presumption that the circuit court considered the mitigating evidence, and we therefore presume the circuit court considered it. *Id.*; *People v. Powell,* 159 Ill. App. 3d 1005, 1011 (1987) (where a PSI report was before the sentencing court, it is presumed that rehabilitation potential was considered).

¶ 29    Moreover, the circuit court stated it had listened to defendant and considered the mitigating factors and the PSI reports, specified that it looked at "the other elements for rehabilitation, [defendant's] effort, and also his success in rehabilitating and better improving himself," and concluded that defendant's "chances of rehabilitation are also great." Thus, the record demonstrates the court did consider the mitigating evidence defendant now argues on appeal. Defendant has not affirmatively shown otherwise. The presence of mitigating factors does not mandate the imposition of the minimum sentence. *People v. Contursi*, 2019 IL App (1st) 162894, ¶ 25. We reject defendant's reliance on *McKinley*, 2020 IL App (1st) 191907, because there is nothing in the record to suggest that the circuit court failed to consider mitigating evidence. See *id.* ¶ 87.

¶ 30    For similar reasons, we reject defendant's argument that the circuit court's failure to cite *aggravating* factors when sentencing defendant confirms that his new sentence is excessive. The court stated it considered "the statutory issues in aggravation" at the time of sentencing. As with mitigating factors, the sentencing court need not recite or expressly weigh aggravating factors for the sentence to be valid. *Bryant*, 2016 IL App (1st) 140421, ¶ 16. Further, the State presented victim impact statements of Lasecki's sons. The State argued that defendant agreed to commit the robbery, had transported the gun, and given it to Karl. Defendant walked away while Karl held Lasecki at gunpoint, failed to render aid to her, accepted her property and the firearm from Karl, and discarded the firearm when pursued by police. Despite the aggravating evidence, his sentence is 11 years below the median of the statutory range.

¶ 31    Given the evidence presented at the sentencing hearing and deference to the circuit court's superior position to weigh and consider that evidence, we conclude that the circuit court did not abuse its discretion.

¶ 32                              III. CONCLUSION

¶ 33    For the foregoing reasons, we affirm the order of the circuit court of Cook County.

¶ 34    Affirmed.